UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 24-mj-00108 |
| | : | |
| ANGELO MARK, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Angelo Mark ("Defendant") be detained pending trial. Defendant is currently charged by Complaint with one count of possession with intent to distribute fentanyl and one count of possession of a firearm in furtherance of drug trafficking. The Government now moves for Defendant's detention pursuant to 18 U.S.C. § 3142(f)(1)(C) (an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*) and (f)(1)(E) (a felony involving a firearm that is not a crime of violence)).[1]

By virtue of the offenses alleged against the Defendant, there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendant's appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. §§ 3142(e)(3)(A) and (e)(3)(B).

---

[1] Under the Bail Reform Act, the Government may proceed by way of proffer. *See, e.g., United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013).

Pursuant to the facts, circumstances, and authorities presented herein and at the detention hearing to be held in this case, the Government respectfully submits that Defendant should be detained pending trial.

## FACTUAL BACKGROUND

A.   **Investigative Background**

Between January 10, 2024 and March 13, 2024, undercover agents with the DEA made six controlled purchases of fentanyl, cocaine, heroin, and suspected MDMA from Javaughn Mark, the brother of the Defendant who resides across the street from the Defendant. A search warrant for 2329 Chester Street SE, Washington, DC and 2320 Chester Street SE, Washington, DC—two addresses known to be associated with Jevaughn Mark—were executed on March 22, 2024.

Angelo Mark, the Defendant, was present inside the residence of 2329 Chester Street when the search warrant was executed. Inside the bedroom over which the Defendant claimed ownership, law enforcement recovered seven firearms, approximately 954 rounds of ammunition, approximately 187 pills, zips of powder (including fentanyl), paraphernalia, and approximately $50,663 in U.S. currency. The Defendant identified the bedroom as his and provided a code that opened the safe located inside the bedroom. Additionally, the Defendant's wallet was located inside the room with credit cards bearing the name "Angelo Mark".





**B.      The Firearms, Ammunition, and Magazines**

From the Defendant's bedroom, law enforcement recovered seven firearms, including three rifles; several of the firearms had no serial numbers.

        1. One black firearm "Smith and Wesson SD40" with laser sight attachment, frame markings not visible, recovered from plastic bag in safe. Eleven rounds in a 14-

round capacity magazine.

2. One green firearm with sight attachment, frame markings not visible. Seven rounds in a seventeen-round capacity magazine, with one round in the chamber.

3. One black firearm with gold slide, no frame markings, recovered from top of the bed.

4. One black firearm with green slide, no frame markings, recovered from black "lock" box in the closet.

5. One black long gun marked "Durkin Precision", recovered from a black long bag.

6. One black long gun with army fatigue strap, recovered from black long gun bag.

7. One black long gun marked "913-36257", recovered from green "yard stash" bag.













In addition to the firearms, law enforcement recovered approximately 954 rounds of ammunition, 12 rifle magazines, 9 large capacity handgun magazines, and a drum magazine containing 48 9mm cartridges.







One of the recovered firearms from the Defendant's bedroom is possibly related to an unlawful discharge investigation through an ATF NIBIN lead, which lists the site of the incident as outside of the searched residence. The green firearm with sight attachment (no serial number),

item #2 listed above, recovered from the Defendant's bedroom had a NIBIN lead to an unlawful discharge investigation on January 15, 2022, where two shots were fired and detected by CIC Shot Spotter in the 3400 block of Massachusetts Avenue SE, Washington, DC. One round was recovered from the roadway, providing the ballistic evidence connecting that unlawful discharge to the Defendant's recovered green firearm.

## C. Evidence of Narcotics Distribution

1. <u>Digital Scales, Packaging, and Cash</u>

In the Defendant's room, law enforcement recovered four digital scales and a large quantity of plastic zip bags consistent with narcotics packaging for distribution. Additionally, stashed in the safe and scattered throughout the Defendant's bedroom, law enforcement recovered $50,663 in cash.











2. Narcotics that Field-Tested Positive for Fentanyl

Law enforcement recovered 14 grams of a white powdered substance, a portion was field-tested and it yielded a positive result for fentanyl. Some of the white powdered substance were recovered inside a shoulder bag where the green firearm was also located. Notably, the packaging found in the Defendant's bedroom containing the white powdered substance appears to be identical to the packaging sold by the Defendant's brother, Jevaughn Mark. The undercover purchased from Jevaughn Mark a zip of suspected cocaine packaged in a clear zip

with black spades. Two clear bags with black spades containing a white powdered substance were also recovered from the Defendant.

*Narcotics sold by the Defendant's brother:*



*Narcotics recovered from the Defendant's bedroom:*



3. <u>The Pills</u>

11

4.
Law enforcement also recovered approximately 187 pills, of approximately 11 different varieties, from the Defendant's bedroom. As pictured above, many of the pills were packaged in a manner consistent with distribution.

## PROCEDURAL HISTORY

On March 22, 2024, Defendant was arrested by law enforcement officers during the execution of the search warrant described above.  The United States filed a same-day complaint charging the Defendant with one count of Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and one count of Possessing a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C §.924(c)(1). On March 25, 2024, Defendant made his initial appearance before the Honorable Moxila Upadhyaya, who set a detention hearing for March 27, 2024, pursuant to the Government's request for detention under 18 U.S.C. § 3142(f)(1)(C).

## LEGAL STANDARDS

Pursuant to 18 U.S.C. § 3142©(3)(A), there is a rebuttable presumption that no conditions nor combinations of conditions can effectively ensure the Defendant's appearance in this case and otherwise protect the community. Accordingly, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" the predicate offense.  18 U.S.C. § 3142©(3). The indictment, standing alone, constitutes probable cause that the person charged committed the offenses charged and is "enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C.

Cir. 1996); *accord United States v. Williams*, 903 F.2d 844, 844 (D.C. Cir. 1990).

As the D.C. Circuit has explained, "the presumption operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). But even if the burden of production is met, the presumption "does not disappear entirely," but rather "remains a factor to be considered among those weighed by the district court." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). The Government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight – even where it is presumed that those standards are satisfied.

The Court may also detain a defendant upon motion of the government or the Court's own motion in a case that involves a "serious risk" that the defendant "will flee." 18 U.S.C. § 3142(f)(2)(A). Where "risk of flight" is the basis for detention, the presumption of detention does not apply, but the government must only prove that no conditions will reasonably assure the defendant's appearance or community safety by a preponderance of the evidence standard – not clear and convincing evidence. *See United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

The Government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). For a detention decision based upon risk of flight, the Government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the Defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, the Government may present evidence by way of a proffer at a detention hearing. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release which will reasonably assure the safety of any other person and the community, and the appearance of the Defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

## ARGUMENT

In consideration of these factors, along with the applicable rebuttable presumption, the Government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the Defendant's appearance at future proceedings.

### III. Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses charged weighs in favor of detention. There is substantial evidence that Defendant was engaged in the selling of narcotics, particularly fentanyl—a dangerous and deadly narcotic that is the leading cause of overdose deaths in the country.[2] The DEA advises that merely: "Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[3]

Deaths due to Fentanyl in the District of Columbia outnumber homicides: in 2023, there were 525 overdose deaths, overwhelmingly attributable to fentanyl, and 272 homicides.

---

[2] The Centers for Disease Control report that: "Fentanyl and other synthetic opioids are the most common drugs involved in overdose deaths. Even in small doses, it can be deadly. Over 150 people die every day from overdoses related to synthetic opioids like fentanyl." *See* Fentanyl Facts, https://www.cdc.gov/stopoverdose/fentanyl/index.html (Sept. 6, 2023).
[3] https://www.dea.gov/resources/facts-about-fentanyl



In nearby Montgomery County, Maryland, the Washington Post reports that "Youth overdoses — which include those by people under the age of 21 — spiked in the D.C. suburb in 2022, rising 77 percent. There were 48 youth overdoses last year, 11 of which were fatal, according to data from the Montgomery County Police Department. In 2021, there were 27 reported youth overdoses; five were fatal." Washington Post, January 21, 2023, available at https://www.washingtonpost.com/education/2023/01/21/youth-overdoses-opioids-fentanyl-montgomery-county.

2023 was a tragically record-breaking year for overdose deaths in the United States: for the first time in United States history, fatal overdoses passed 112,000 deaths, largely driven by fentanyl. *See In 2023 fentanyl overdoses ravaged the U.S. and fueled a new culture war fight*, NPR, December 28, 2023, available at https://www.npr.org/2023/12/28/1220881380/overdose-fentanyl-drugs-addiction. This national trend has had a devastating impact in this District: a May 2023 report prepared by the DC Office of the Chief Medical Examiner highlighted that in 2016 62% of the 233 opioid overdose deaths were attributable to fentanyl or an analog, and in 2022 an

15

overwhelming 97% of the 458 such deaths were attributable to fentanyl or an analog. *Opioid-related Fatal Overdoses: January 1, 2017, to February 28, 2023*, DC OCME, May 16, 2023, https://ocme.dc.gov/sites/default/files/dc/sites/ocme/agency_content/Opioid%20related%20Overdoses%20Deaths_May2023.pdf. This was despite DEA Washington Division (covering DC, Maryland, and Virginia) reporting a 250% increase in seizures of fentanyl pills in 2023, constituting 6.1 million potentially deadly doses and more than 500,000 pills.

The four digital scales, large quantity of zips used for packaging narcotics for distribution, and the approximate $50,000 in cash is highly indicative of narcotics trafficking. Indeed, portions of the white-powdered substance which tested postive for fentanyl were recovered next to the loaded green firearm stored in a shoulder bag, hanging from the Defendant's bedrail.

Defendant has thus demonstrated that he has ready access to this highly dangerous drug and that he has earned extensive income doing so—with approximately fifty-thousand dollars in cash being recovered from his residence, approximately 900 grams of suspected fentanyl in his brother's residence across the street, and identical packaging used by both the Defendant and his brother, Jevaughn Mark.

Further, Defendant has possessed firearms while engaging in this drug trafficking conduct. Seven firearms, including both pistols and rifles, nearly a thousand rounds of ammunition, and a drum magazine were all recovered from the Defendant's bedroom. Additionally, the Defendant kept his cash next to his gun in his safe and carried his drugs with his loaded firearm in a shoulder bag.

## II.   Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, is incredibly strong—and clearly favors detention. Defendant claimed ownership over the bedroom in which all the

contraband were recovered from. The Defendant unlocked the safe in his room with a code and his wallet was found inside the bedroom. The assault-style rifles, drum magazine with 48 rounds, the "ghost" guns with no serial numbers, four digital scales, countless zip packaging, $50,000 in cash, and narcotics that tested positive for fentanyl were all recovered in the Defendant's room. The Defendant is believed to be the only occupant of that bedroom. The Defendant is facing a 60-month mandatory minimum for the 924©.

### III.  Defendant's History and Characteristics

The third factor, the history and characteristics of the defendant, similarly weighs in favor of detention. This Court considers, among other factors, "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history." *United States v. Taylor*, 289 F. Supp. 3d 55, 69 (D.D.C. 2018). This Court in considering pretrial detention "may also consider prior arrests or charges brought against a defendant, even when those actions did not result in convictions." *See id.* at 70.

Defendant has multiple prior arrests. Most recently on October 31, 2023, the Defendant was arrested after law enforcement responded to a Shot Spotter report of 13 shots fired at 2101 Martin Luther King Ave SE around 10:30PM. Police responded to Mama's Pizza Kitchen where a restaurant worker stated that the vehicle had just fled the scene traveling southbound on MLK Ave. Officers stopped the vehicle, which had a damaged rear window with bullet holes. The Defendant was the only person in the car. He immediately locked his door and was uncooperative with police. Once he did step out, police did a protective pat down and recovered a black firearm from the Defendant's waistband. The handgun was another "ghost gun" without a serial number

with 14 rounds of ammunition in a 16-round capacity magazine and one in the chamber. This firearm also had a laser sight attached.

In June 2017, the Defendant was arrested for first degree sexual abuse following a report by his ex-girlfriend that he had attempted to rape her. Due to the sensitivity of the events as reported by the victim, the Government will refrain from discussing the details in this memorandum.

In January 2013, the Defendant was charged with obstruction of justice, theft, destruction of property, and unlawful entry of a motor vehicle. His brother, Javaughn Mark, was also charged with theft, destruction of property, and unlawful entry of a motor vehicle. The brothers were observed by an eyewitness breaking into three cars. Both brothers were charged with unlawful entry of the three cars, destruction of property, and theft. Sunglasses stolen from one of the cars were found on the Defendant. The Defendant was also charged with obstruction of justice because when the eyewitness (who called 911) identified the two brothers, the Defendant made a gun motion with his hands as if he was shooting the eyewitness. The Defendant was convicted of Obstruction of Justice and sentenced to 36 months under the Youth Rehabilitation Act.

In May 2012, the Defendant entered a metro station emergency gate without an attempt to pay. Officers stopped him and he refused to present his fare card. He was asked to leave several times but refused to comply, formed closed fists, became loud and angry, causing the officers to use pepper spray. A search incident to arrest revealed one zip of marijuana. The Defendant was charged with possession of marijuana and unlawful entry, but his case was ultimately dismissed at trial for want of prosecution.

**IV.**     **Danger to the Community**

Finally, the nature and seriousness of the danger to any person or the community posed by Defendant's release are grave. Defendant's possession of multiple firearms to further his drug trafficking poses a danger to the community. As reflected in his arrest history, the Defendant not merely possessed an arsenal of firearms, but he used them in the community. As the October 31, 2023 arrest and the NIBIN lead for the green firearm demonstrate, the Defendant likely fired his guns in public. One Shot Spotter detected 13 shots while the other detected 2 shots. His brazen use of his guns demonstrates his willingness and proclivity to deploy these firearms, which is especially dangerous when he is carrying a firearm in a shoulder bag when distributing narcotics.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure the safety of the community or ensure that the defendant will comply with court orders and abide by appropriate release conditions.

## **CONCLUSION**

The Government respectfully requests that the Court grant the Government's motion to detain Defendant Angelo Mark pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

*/s/ Iris McCranie*
IRIS MCCRANIE
N.Y. Bar No. 501123
Assistant United States Attorney
Violence Reduction and Trafficking Offenses
601 D Street, NW
Washington, D.C. 20530

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2024, a copy of the foregoing was submitted via CM/ECF, which will transmit to counsel of record to Defendant Angelo Mark.

*/s/ Iris McCranie*
IRIS MCCRANIE