```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2                           ---

 3   UNITED STATES OF AMERICA,      )
                                    )
 4                                  )
             Plaintiff,             )  CRIMINAL NO. 24-143
 5                                  )
     v.                             )
 6                                  )  March 27, 2024
     ANGELO MARK,                   )
 7                                  )  3:49 p.m.
                                    )
 8           Defendant.             )  FTR RECORDING
     _____)
 9
                  TRANSCRIPT OF DETENTION HEARING
10
              BEFORE THE HONORABLE MOXILA A. UPADHYAYA
11                 UNITED STATES MAGISTRATE JUDGE
                             ---
12
     APPEARANCES:        UNITED STATES ATTORNEY'S OFFICE
13                       BY:  IRIS McCRANIE, AUSA
                              TIMOTHY J. COLEY, AUSA
14                       601 D Street NW
                         Washington, DC 20530
15                       (202)834-4090
                         Email: iris.mccranie@usdoj.gov
16                              timothy.coley@usdoj.gov

17                       For the Government

18                       OFFICE OF THE FEDERAL PUBLIC DEFENDER
                         BY:  MARIA JACOB, ESQ.
19                       625 Indiana Avenue, NW
                         Washington, DC 20004
20                       (202)208-7500
                         Email: maria_jacob@fd.org
21
                         For the Defendant
22
                         JAYNICE HARDEN, PRETRIAL SERVICES
23
                             ---
24   COURT REPORTER:     CHANDRA R. KEAN, RMR
                         Official Court Reporter
25                       333 Constitution Avenue, NW
                         Washington, DC 20001
```

<u>**PROCEEDINGS**</u>

1

2          (Court called to order at 3:49 p.m.)

3          DEPUTY COURTROOM CLERK:  Your Honor, this is

4    Magistrate Case Number 24-108, the United States of

5    America versus Angelo Mark.

6          The defendant is present in the courtroom.  This

7    matter is set for a detention hearing.  Parties, please

8    introduce yourselves for the record, starting with the

9    government.

10          MS. McCRANIE:  Good afternoon, Your Honor.

11    Iris McCranie and Tim Coley for the United States.

12          THE COURT:  Good afternoon.

13          MS. JACOB:  Good afternoon, Your Honor.  Maria

14    Jacob on behalf of Angelo Mark, who is present, in

15    custody.

16          THE COURT:  Good afternoon, Ms. Jacob.

17      Good afternoon, Mr. Mark.

18          PROBATION/PRETRIAL OFFICER:  Good afternoon.

19    Jaynice Harden on behalf of Pretrial Services.

20          THE COURT:  I have this set for detention

21    hearing.  I've reviewed the papers.

22      Ms. McCranie, if you wish to give brief argument on

23    here.

24          MS. McCRANIE:  Thank you, Your Honor.

25      I understand Your Honor just heard the case for Mr.

1    Angelo Mark's brother, Mr. Jevaughn Mark, so I just want

2    to give a quick background on how we get here.

3        Mr. Angelo Mark resides at 2329 Southeast, and

4    that's where he was found when the search warrant was

5    executed on March 22nd.  And as you know, there were six

6    controlled buys leading the police to Mr. Jevaughn Mark,

7    who was associated with the address where his brother

8    Angelo Mark resides.

9        When the police entered the home of Mr. Angelo

10   Mark, they recovered seven firearms, three of which were

11   assault-style rifles.

12       Six of those seven, I believe, had no serial

13   numbers, and at least one was loaded with a round in the

14   chamber.  And the one that was loaded with a round in

15   the chamber was also located next to Zips of white

16   powder that tested positive -- field-tested positive for

17   fentanyl.

18       And that marking on the Zips had a very distinct

19   black spade, which is consistent with the same marking

20   of the fentanyl that his brother, Jevaughn Mark, sold to

21   the undercovers.

22       So that's how we got here for Mr. Angelo Mark.

23   Additionally, Mr. Angelo Mark's residence, in the

24   bedroom that he did claim ownership --

25               THE COURT:  The Zips you said had the same

1    markings, are these the actual Zips that his brother

2    sold to an undercover officer, the same markings as the

3    Zips that the UC in the Jevaughn Mark case had come into

4    possession of?

5         MS. McCRANIE:  Yes, Your Honor.  It's the same

6    black spade.  It's not the same bag, obviously, but it's

7    the same marking.

8         THE COURT:  Yep.

9         MS. McCRANIE:  More concerning, in Mr. Angelo

10   Mark's presence were four digital scales.  Big

11   quantities -- I don't have a count, but large

12   quantities, as evidenced by the picture that was in the

13   detention memo of the Zips that are used for narcotics

14   distribution -- and multiple drum magazines, high

15   capacity.  One had 48 rounds.

16       So what we know now is different than what we knew

17   on the day that we filed the complaint.  So the day we

18   filed the complaint, we knew all those things that I

19   just went over.

20       And now we have preliminary messages that I did not

21   mention in the detention memo because we got this

22   literally just hours before the hearing today.  I have

23   shared a copy with defense counsel.

24       And in these preliminary --

25         THE COURT:  When did you give it to her?

1          MS. McCRANIE:  Maybe around 2:00?  1:00, 2:00.

2          MS. JACOB:  1:30, Your Honor.

3          MS. McCRANIE:  1:30.

4          THE COURT:  Okay.  So not just "just now."

5    Okay.

6          MS. McCRANIE:  Yes.  And the government

7    received it shortly after noon.

8          THE COURT:  Okay.

9          MS. McCRANIE:  We do believe that there are

10   messages that show that Mr. Angelo Mark and Mr. Jevaughn

11   Mark at least have knowledge of each other's trafficking

12   activities and, specifically, the dealing of narcotics

13   and the purchase of guns.  And I would like to just

14   review some of these messages with the Court.

15      This is a preliminary report from the extraction

16   from Mr. Jevaughn Mark's phone.  But you see here that

17   on -- in March of 2023 -- and just so -- to orient Your

18   Honor, so the red highlighted box here is going to be

19   Angelo Mark's phone number.  So when it's left to right,

20   this means that Angelo is texting Jevaughn.

21      So here, an incoming message for Jevaughn, they're

22   talking about a joint in a green bag.  They're talking

23   about "regular" or "raw."  They're talking about an

24   "eight ball," "9-millimeter."  All those words are

25   indicative of a firearm and of cocaine or other drugs.

1              THE COURT:  Which -- where's the firearm --

2       discussion of the firearms?  Oh the 9-millimeter, okay.

3              MS. McCRANIE:  The 9-millimeter.

4          This here is dated November of 2023.  And again, it

5       is discussing building and the purchase of firearms at

6       gun shows.

7          So starting at the bottom -- so chronologically, it

8       moves from the bottom to the top.

9          So Mr. Angelo Mark is telling his brother that he

10      just got bagged "with a joint I built from the gun

11      show."  And in a moment, Your Honor, I will discuss the

12      October 31st, 2023, arrest of Mr. Angelo Mark where a

13      ghost gun was recovered from his person.

14         So I believe this is where Mr. Angelo Mark is

15      talking to his brother about the ghost gun that he had

16      on him, and how he did not want -- he had apprehension

17      of going back to the gun show to purchase more guns.

18         But his brother, Jevaughn Mark, tells him, "Let me

19      get two laser joints when you go.  Money and laptop.

20      One red, one green."

21         So it appears here that Jevaughn Mark is asking

22      Angelo Mark to purchase him attachments for the gun, the

23      laser.

24         Moving on to November of 2022, here Jevaughn

25      Mark -- actually -- I'm sorry.  Angelo Mark has an

1    incoming message to Jevaughn Mark.  So Angelo to

2    Jevaughn:

3         "You got some on you."

4         "Yeah."

5         And then Jevaughn further says, "14 grams or $75 in

6    price I'm getting it for."

7         Up on top here, you have an incoming message from

8    Jevaughn to Angelo where it says, "You got a 14-gram

9    boot."  And "boot," as you know, Your Honor, is another

10   type of drug that's being sold on the streets.  And

11   there's discussion of pricing for that.

12        In October of 2020, they're talking about

13   exchanging money on Cash App, how "there's cash by the

14   safe."  And how, again, Angelo was going to the gun show

15   again tomorrow.  And he's asking his brother Jevaughn,

16   "Need anything from up there?"

17        "I don't know.  Let me know what they got."

18        "They gonna have everything.  Let me know anything

19   specific you looking for."

20        And again, as we know, Mr. Jevaughn Mark is a felon

21   and cannot legally purchase weapons.  Mr. Angelo Mark is

22   purchasing it for him.

23             THE COURT:  What's the date of the -- of that

24   text string?

25             MS. McCRANIE:  This would be October of 2022.

1           THE COURT:  Okay.

2           MS. McCRANIE:  These messages are from March of

3    2022.  There's a lot here, but many of it is in sort of

4    code words, perhaps, but I think what is evident is

5    there's discussion of -- well, first, there's some

6    discussion of weed here, and then it talks about snow

7    white powder versus Johnson powder.

8           "More easier clients going come."

9           "I put up some.  Don't get half, though.  No

10   clients neither."

11          Because the -- over here, they are discussing the

12   sale of narcotics and clients purchasing different types

13   of narcotics and the quality of their products.

14          And this is a message from January of 2021, and

15   from Angelo to Jevaughn.  It says:  "How much half time

16   of snow go for?"

17          As we know, "snow" is another word for cocaine.

18          And Jevaughn's response to Angelo -- it's on the

19   far right here -- and it says "800."

20          Your Honor, we know these messages suggest that the

21   two them perhaps were working together in this

22   distribution of narcotics.  So all the quantity found at

23   Mr. Angelo Mark's residence is low, but if you take

24   these text messages in context, couple it with the four

25   digital scales, the countless bags of Zips, and all

1    those firearms, it does appear that the two of them were

2    working together to distribute this very dangerous drug,

3    fentanyl, as Your Honor stated, one of the most

4    deadliest things on the -- being sold today.

5           THE COURT:  Did Mr. Angelo Mark have a license

6    to carry any of these firearms?

7           MS. McCRANIE:  We don't believe so, Your Honor.

8    In fact, he was arrested and charged by MPD on

9    October 23rd -- I'm sorry -- October 31st, 2023, for

10   CPWL.  The case was no-papered out of Superior Court.

11          THE COURT:  And how many of the seven firearms

12   were ghost guns?

13          MS. McCRANIE:  I believe six.  I can tell that

14   the four pistols did not have any markings.  I believe

15   two of the three rifles had no markings.

16          THE COURT:  Okay.

17          MS. McCRANIE:  Further, Your Honor, we also

18   know Mr. Angelo Mark not just possesses these guns and

19   holds them in his residence, but he also leaves the home

20   with these guns.

21   As mentioned earlier, on October 31st he was

22   arrested.  And I have provided that MPD report to

23   defense counsel earlier this morning as well.  But in

24   that report, police responded to a location in public

25   where 13 shots were fired in response to the

1   ShotSpotter.

2        When they got there, it was a pizza kitchen.  One

3   of the employees had identified the vehicle and said,

4   "the vehicle fled that way."

5        Police basically stopped Mr. Angelo Mark because he

6   had some bullet holes in the back of his windshield, had

7   him step out -- when they stepped him out, they did a

8   pat down and recovered a ghost gun, a large-capacity

9   ghost gun with one round in the chamber that was tucked

10  in his waistband.

11       Again, this gun is consistent with the type of

12  pistols that he keeps.  So not only is he keeping these

13  guns in the home, he's bringing them out in public, and

14  he very likely fired it as well.

15       We also know from the NIBIN lead report that in

16  January of 2022, there were two shots fired, and police

17  responded to that.  And they recovered one bullet that

18  now -- that was tested.  And the NIBIN lead shows --

19  obviously, it's subject to ballistics confirmation,

20  which is why I used the word "likely" in my detention

21  memo, but it does show that it's similar to the firearm

22  that was recovered from Mr. Angelo Mark's residence.

23       Specifically, the green firearm that was kept

24  loaded in his shoulder bag that was hanging off his bed

25  rail that was also found with the white Zips.

1          THE COURT:  The -- how many firearms were in

2     Mr. Mark's bedroom versus how many in a safe, if any?

3          MS. McCRANIE:  I believe, Your Honor, there was

4     one in a safe.  There were several -- I think the long

5     guns were mostly in the closet.  And I believe the

6     others were scattered throughout the house, the other

7     pistols.

8          THE COURT:  The gun that was hanging from the

9     bed rail where the Zips were located, was that gun

10     loaded?

11          MS. McCRANIE:  That gun was loaded, yes, Your

12     Honor.  There was one in the chamber.

13          THE COURT:  Okay.

14          MS. McCRANIE:  Your Honor, I would just like to

15     highlight, although this is a bit dated, but in 2013 he

16     was arrested.  And my records do show that he did plead

17     guilty and received a 36-month sentence.  It might have

18     been pursuant to the YRA, which is why it may not have

19     showed up in the PSR.

20          But in that case, he was working with his brother,

21     Jevaughn Mark, where the two of them were breaking into

22     vehicles by using a brick.  An eyewitness had witnessed

23     the two of them do that, and when the showup was done

24     with both brothers, Mr. Angelo Mark made a finger gun

25     motion at the eyewitness.  And that was the basis for

1    the obstruction of justice charge, and my records show

2    he received 36 months for that.

3         And I bring that to the Court's attention to

4    illustrate that the two brothers have a history of

5    working together, and that his conduct and his -- as

6    highlighted in this case, has been longstanding and

7    that -- possibly also that he has a conviction for more

8    than one year.

9         I understand Your Honor did not find persuasive

10   evidence for Jevaughn Mark.  He might be a flight risk

11   going to Trinidad, but I just also want to highlight

12   that in some of these messages that we received, there

13   is mention of Mr. Angelo Mark also going to Trinidad,

14   that he might have had a bag, a Trinidad bag on his bed,

15   and that Mr. Jevaughn Mark was telling him "just go get

16   it because it's cheaper in Trinidad."

17        I wasn't sure what the thing to get was.

18        So pending any questions, Your Honor, I understand

19   that the defendant's mother will testify, and I may have

20   some comments about that.  But pending your questions,

21   that's all I have.

22            THE COURT:  Well, the defendant has filed a

23   motion for pretrial release and cites some cases that

24   the defendant argues are analogous cases.

25        Do you have a response to any of those?

```
 1              MS. McCRANIE:  No, Your Honor, I did not --
 2              THE COURT:  Analogous cases in which the
 3      defendants were released.
 4              MS. McCRANIE:  Your Honor, I apologize.  I did
 5      not have a chance to look at those cases and to
 6      distinguish the facts here.  But, again, I rely on the
 7      fact that we have an arsenal of weapons here, the large
 8      quantity of drugs that can be associated to Mr. Angelo
 9      through his brother, and the paraphernalia that was
10      recovered from his bedroom.  And the $50,000 in cash as
11      well.
12              THE COURT:  Well, is it 50,000 or is it 5,000?
13              MS. McCRANIE:  So the reason the complaint read
14      5,000 was that money was not counted on scene.  So when
15      we filed the complaint, we wanted to be conservative and
16      extra careful, so it was sort of just the most
17      conservative estimate that we got.  And once they
18      counted the money, they confirmed that it was over
19      50,000.
20              THE COURT:  Okay.  Thank you.
21          Ms. Jacob.
22              MS. JACOB:  Your Honor, we heard a lot from the
23      government about the proffered allegations in this case,
24      but we have not heard anything as to why there are no
25      conditions or combinations that can assure the safety of
```

1    the community and assure Mr. Angelo Mark's appearance at

2    future proceedings.

3        And I think that's why we're here, Your Honor.  I

4    mean, I get that the government believes at this point

5    that their evidence is strong, but that is one factor of

6    many factors that the Court considers at this point in

7    time.

8        In fact, Your Honor, they focused on prior arrests,

9    which I want to take up first because I think in the

10    case that they cited to, *United States v. Taylor*, that

11    speaks about, well, okay, the Court's allowed to

12    consider prior arrests.

13        That very same case that they cited to is a case

14    where Judge Moss actually released a defendant,

15    essentially revoking the detention order of the

16    magistrate detention order.  And this case was actually

17    pretty similar.  It was a "guns and drugs" case, intent

18    to distribute PCP, and it was a presumption case.

19            THE COURT:  Do you have a citation for the

20    case?

21            MS. JACOB:  Yes, Your Honor.  289 F. Supp. 3d,

22    55, and that's 2018.

23        And, Your Honor, I do have a copy if the Court

24    would like to reference it, but essentially, there was a

25    hearing at the lower magistrate court level where the

1    magistrate court decided to detain the defendant.  And

2    then based on some change in circumstances, the

3    defendant filed a motion to revoke that order.  And

4    Judge Moss -- this opinion is published and went

5    through, you know, exactly his reasoning why -- why the

6    government had not met their burden to show by clear and

7    convincing evidence that this individual was a danger

8    and was a flight risk.

9         And now, to be fair, Your Honor, Judge Moss did

10   base some of his decision on the fact that there had

11   been suppression litigation.  But, of course, as the

12   Court has, you know, met this before with defense

13   attorneys proffering that at detention hearings, that

14   it's not necessarily something that weighs very heavily.

15   But there were some factors that Judge Moss referenced

16   that discussed the weight of the evidence because of

17   those suppression issues.

18        However, this defendant in *United States v. Taylor*

19   had two prior felonies.  One was a distribution felony

20   and the other was a firearms felony.

21        In this case, Your Honor, we're talking about

22   somebody with no prior convictions.  And I think this

23   separates -- this among many other factors separates

24   Mr. Angelo Mark's case from his older brother's case

25   that the Court just heard.

1           Your Honor, the government focuses on prior

2     arrests.  You know, 2012, Mr. Angelo Mark was 18 years

3     old; 2013, he was 19 years old.  They focus on one case,

4     one prior arrest from last year to show that, okay, he

5     had a firearm on him, allegedly.  But something notable,

6     Your Honor, is -- two things:

7           First, you know, their whole proffer here today is

8     that he's using firearms in connection with a drug

9     trafficking operation, but there's nothing to indicate

10    from that arrest, from the police report, that he had

11    any drugs on him at the time.

12          And, Your Honor, I don't -- I just want to, you

13    know -- I just note that for the record, but I think

14    that the Court should not consider the prior arrest.  I

15    mean, I think that -- the fact that the case was

16    no-papered just speaks volumes, as well as all of the

17    other prior arrests.

18          And so, Your Honor, the government is saying to the

19    Court now, well, we believe he's a danger, we should

20    detain him while, you know, just -- not even a year ago,

21    they decided that he was not a danger.  And I don't know

22    all the decision-making that goes into the -- I've never

23    been a prosecutor.  I don't know all the decision-making

24    that goes into that.  But the stark contrast is just

25    what I know, that now they're seeking detention based on

1    danger when, you know, they've no-papered a case that

2    was less than a year ago.

3          THE COURT:  No, I understand that, and I will

4    consider that argument.  But are you -- you're not

5    arguing that the Court on a detention hearing cannot

6    accept or consider prior arrests or prior uncharged

7    conduct, are you?  The law is very clear that the Court

8    can --

9          MS. JACOB:  Yes --

10          THE COURT:  -- so if that's -- okay.

11          MS. JACOB:  I'm not saying that, Your Honor.

12    In fact, the -- *United States v. Taylor* does say that

13    the Court can consider it.  But I will note that, you

14    know, it does not look like -- it does not appear, after

15    reading *Taylor*, that that was a significant

16    consideration.  Judge Moss simply cites it in a string

17    cite of, you know, all the things he's considering.

18          And I think actually, you know, he even -- he makes

19    a pretty strong statement in his opinion that

20    essentially says, you know, even if -- as far as weight

21    of the evidence goes.  And it says even if, you know, we

22    have all the evidence to convict this person right now,

23    that is not -- that's not where this inquiry stops.  It

24    is one factor among many.

25          And the government in that case did not prove its

1    burden.  And so that was the focus of the opinion.

2              THE COURT:  Can you -- there's a case that you

3    cite called *United States v. Joseph Thomas*.

4              MS. JACOB:  Yes.

5              THE COURT:  Arguing that Judge Meriweather

6    released someone under analogous conditions and was

7    confirmed by the district judge.  I'll just note that

8    that docket ends where the case turned into a CR case.

9         Do you have the CR number for that case?

10             MS. JACOB:  I -- you know, Your Honor, it was

11   my case --

12             THE COURT:  Because the order -- yeah, the

13   order isn't on the docket so I couldn't read anything

14   about the case.

15             MS. JACOB:  It was my case, but I can tell the

16   Court that the case did not last very long in District

17   Court.  The -- it was Judge Mehta's case, and the

18   government voluntarily dismissed that case.

19        But as far as the documents that would go to the

20   appeal, I'm sorry, I don't have -- I don't remember off

21   the top of my head.  I should have cited --

22             THE COURT:  Do you remember the year?

23             MS. JACOB:  I'm sorry?

24             THE COURT:  Do you remember the year?

25             MS. JACOB:  Yes.

1          THE COURT:  Because I'm not able to look up

2     anything related to this case.

3          MS. JACOB:  It would have been --

4          THE COURT:  I mean, I know it's a 22-MJ number,

5     I suppose.

6          MS. JACOB:  It probably was a 22 because it

7     was -- there was not much delay.  It was appealed right

8     away and then we had a hearing just to -- you know, a

9     week later.

10         But, Your Honor, the -- you know, I do note that

11    there were -- I think Judge Meriweather found that there

12    were compelling -- that his history -- that Mr. Thomas's

13    history and characteristics were compelling, and I think

14    that Judge Mehta agreed that that was the case.

15         And -- but I would note that there were differences

16    between -- I mean, Mr. Thomas, he -- they allegedly

17    found guns and drugs in his car that he was operating.

18    Whereas, in this case, the allegations are that they

19    were in Mr. Angelo Mark's bedroom.  So I do think that's

20    a significant difference.  But we're speaking about

21    history and characteristics.  I do believe that Angelo

22    Mark's history and characteristics are just as

23    compelling as Joseph Thomas's.

24         I've already stated no prior convictions, which I

25    do think is probably the most significant factor here,

1    because I think that indicates to the Court that he's

2    never been, you know, subject to these conditions

3    before.  And so there's no indication -- no allegations

4    that he would not abide by any conditions the Court

5    placed.

6        We also have somebody who was full-time employed, a

7    government job; the Department of Public Works, which

8    also -- very compelling.  He had, you know, full-time

9    hours and was contributing -- not just living at his

10   mother's house, but actually contributing to the

11   household.  And his mother, Alice Delahunt, is here to

12   testify, if the Court would permit.  And she will tell

13   the Court that she relies on him, you know, to make her

14   mortgage payments.  So this is not just somebody, you

15   know, bumming around in his mom's place; this is

16   somebody who is actually contributing.

17       And this job, Your Honor, he's had for a year.  And

18   of course, as the Court knows, if he's detained, he will

19   likely not be able to hold on to that position.

20       Your Honor, I understand that the -- you know, the

21   fact that they're brothers -- I mean, I know -- I

22   understand that these are a little unusual

23   circumstances, but I don't think that this is any

24   different than any other alleged, you know -- not

25   charged as a conspiracy, but alleged case where there's,

1    you know, multiple people involved.

2        And so I, you know -- I would note that, you know,

3    the circumstances of them being brothers, I don't think

4    has anything to do with whether or not Angelo Mark

5    individually will abide by the conditions of release set

6    forth by the Court.

7        THE COURT:  No, I agree with that.  I evaluate

8    each person on his or her own, as *Munchel* requires us to

9    do, but I do have a concern about -- with respect --

10   with any third-party custodianship, you know, being

11   placed back in the same home where a significant number

12   of guns were found, and some drugs.

13       So that is of concern to the Court.

14       MS. JACOB:  I understand, Your Honor, and I --

15   and that's why I brought Ms. Delahunt and, you know --

16   I'm very thankful for her to be here.  She's a

17   registered nurse.  She's very busy.  She came straight

18   from work.  But I think it's important for her to

19   testify so the Court can understand some of the

20   circumstances.

21       What I can proffer before she testifies is that,

22   obviously, she had no idea.  I mean, this is a grown

23   man.  He's 30 years old.  He's essentially, you know,

24   renting a room in this house, and, you know, there's no,

25   you know, reason for a mother to search a grown man's

1    bedroom.  I mean, there's just absolutely no indication

2    that she would have ever known.  And now that she knows,

3    it's a very different story.

4          But I think that as far as, Your Honor, the

5    residence that was chosen, you know, I --

6          THE COURT:  You know, I'll also note that

7    there's -- according to your memorandum, that Mr. Mark

8    has custody of his son, right?

9          Is that --

10          MS. JACOB:  Joint.

11          THE COURT:  Joint custody of his son, 50

12    percent of time, and there were loaded guns in the

13    house.

14          MS. JACOB:  I understand that, Your Honor.

15          THE COURT:  That's very troubling for the

16    Court.

17          MS. JACOB:  I understand that, Your Honor.

18    But, of course, we also have -- on the flip side of

19    that, we have letters of support saying that he was an

20    excellent father so -- which further indicates to the

21    Court that it must be that, you know, any alleged

22    firearm possession was not mingled with his

23    responsibilities as a father.

24          And so the way that the joint custody works is he's

25    one week with Mr. Mark and one week with his mother.

1    And, Your Honor, I -- you know, in the interim these

2    past few days, his mother and his stepfather had been

3    caring for the son, taking him to school and making sure

4    he's cared for, because this is -- he's home this week.

5        But, Your Honor, I do think that -- I understand

6    the Court's concern, but I also think that that's a

7    motivating factor for him to abide by his conditions of

8    release.  He has people who rely on him, and that's a

9    big motivating factor.

10        So I think that also goes in favor of the history

11    and characteristics to the extent that we're talking

12    about what seems to be a responsible, caring,

13    contributing father.

14        And, Your Honor, in the -- of course, if the Court

15    releases him, you know, there's going to be -- we will

16    propose a condition that the, you know -- his mother

17    searches the room to make sure there's no firearms or

18    contraband.

19        I just -- and, Your Honor, we did think about

20    another residence.  You know, I think that it's really

21    difficult because I think that, you know, his entire

22    life is with his family.  And, you know, I think this

23    idea that we, you know -- we find sort of the perfect

24    third-party custodian is a lot of times unattainable.

25    And I think that in this situation, the concern of the

1    residence really is just tied to the fact that there

2    were alleged contraband found in the same residence.

3    But I think moving forward with conditions of release,

4    I'm hoping that Ms. Delahunt can speak to the Court and

5    assure the Court that there -- that will not be the case

6    moving forward.

7            THE COURT:  Well, I appreciate -- I appreciate

8    Ms. Delahunt's appearance today.  I don't know whether

9    I'm going to allow testimony at this time, but I do

10   appreciate that this must be a very difficult time for

11   her.  She's been through a lot.

12       And I thank you for your time to be here.  If I

13   don't consider testimony at this time, ma'am, it's not

14   because I don't appreciate your presence and appreciate

15   that you're doing everything you can to help.  There are

16   other factors that I have to consider, but I appreciate

17   you being here, ma'am.

18       Is there anything else, Ms. Jacob?

19           MS. JACOB:  The last thing that I would note,

20   Your Honor, is to respond to the government's allegation

21   about this NIBIN lead.  I would note that after

22   reviewing that, it looks like whatever shot was fired

23   was on January 15th of 2022, and that was, you know,

24   more than two years ago.  So that -- there's just no way

25   that we can -- you know, that we can conclude that that

1    was -- if it was fired, that it was fired by a firearm

2    that Mr. Mark had possession of at that time.

3         THE COURT:  Well, I mean, even if you set that

4    aside, there's the more recent January 2022 incident.  I

5    mean, this possession of multiple ghost guns is very

6    troubling.

7         As you know, the Court -- the ghost guns -- and

8    we've seen through messages, that Mr. Angelo Mark knew

9    that he had possession of ghost guns and intentionally

10   possessed ghost guns.  Those were all meant to evade law

11   enforcement detection.

12        And so what's concerning in addition to the number

13   of ghost guns and other firearms found at the residence,

14   is that he was in possession, on his person, while

15   driving in January 2022.

16        So the NIBIN lead from that other -- I accept that

17   argument, but that doesn't take away this more recent

18   incident where there's the allegation of a shooting and

19   then, you know -- which led to his car.  He was the only

20   one in the car, and he was driving and had a ghost gun

21   in his possession.

22        MS. JACOB:  Your Honor, one thing I would say

23   is that we also would propose a condition that he not

24   drive to work, that that car be in control of a

25   third-party custodian.  I think that would ameliorate

1    the Court's concern here.

2        I really do think that this is a case about --

3        THE COURT:  It's not the driving that's just

4    the problem.

5        MS. JACOB:  I understand.  I understand, Your

6    Honor.  I understand what the Court is referring to, but

7    I think that given these strict proposed conditions in

8    place, you know, I think these would reasonably assure

9    the Court that he will not be out, you know, doing those

10   things.

11       I think that there's no indication -- you know, if

12   somebody with a prior criminal history -- I would maybe

13   understand if there were repeated instances of conduct

14   where there's conditions in place, where that person is

15   on supervised release and they still continue to have

16   allegations.  But this is somebody that has never, never

17   been subject to federal court.

18       You know, this is the strictest environment.  And I

19   think that he has a lot to lose here.  And I think that,

20   you know, he -- you know, I just don't think there's any

21   indication on the record right now that he will not

22   follow the Court's orders.  And what we're proposing is

23   very strict.

24       And, Your Honor, there are past cases in which, you

25   know -- similar cases where there are serious

1    allegations of fentanyl distribution and firearm

2    possession, where it still resulted in release.  And I

3    think that's because the Court was assured that the

4    conditions in place would ameliorate any concern.

5         THE COURT:  Is *Thomas* your best analogous case

6    for this point?  And I did find the CR number due to my

7    amazing courtroom deputy, so I was able to find the

8    number but -- while we were waiting for, you know, the

9    argument to end.  So I'll be able to look that up.

10        But is Thomas the best case, it seems?

11        MS. JACOB:  And *United States v. Taylor*.

12        And I would note that with *Thomas*, I didn't mention

13   he did have a criminal history, and while not -- but not

14   violent, you know, nothing violent, but he did have a

15   criminal history.  And so I just come back, Your Honor,

16   and conclude on that, that Mr. Angelo Mark does not have

17   any prior convictions.

18        THE COURT:  Thank you very much, Ms. Jacob.  I

19   appreciate it.

20        Ms. McCranie?

21        MS. McCRANIE:  Your Honor, we do believe that

22   Mr. Angelo Mark has a prior conviction from 2013 for

23   36 months for the obstruction of justice, but apart from

24   that --

25        THE COURT:  The conviction was set aside under

1    the Youth Act?

2         MS. McCRANIE:  I have not been able to verify

3    that.  I don't have the information one way or the

4    other.  All I see is that it was subject to the YRA.  I

5    don't know if that meant he was sentenced under that YRA

6    or set aside.  And that is something I'm working to

7    understand.

8         THE COURT:  Is this a mandatory minimum -- does

9    this case have mandatory minimums?

10        MS. McCRANIE:  As charged right now, yes, Your

11   Honor.  It's a five-year mandatory minimum for the

12   924(c).

13        THE COURT:  Okay.

14        MS. McCRANIE:  And going back to what defense

15   counsel said about the *Thomas* case, those were

16   nonviolent convictions.  Here, although -- well, whether

17   or not we consider the obstruction of justice

18   conviction, we do know his conduct in 2023 does suggest

19   the carrying the pistol out in public, on his person,

20   the ghost gun, that's very different than the nonviolent

21   conviction.

22        As the Court knows, we paper cases for a variety --

23   or not paper cases for a variety of reasons.  It does

24   not speak to the weight of the evidence in a particular

25   case.  It could be Fourth Amendment issues or other

1    issues for the office to decide not to charge a

2    particular case.

3         THE COURT:  But the defendant's argument is a

4    different one.  The defendant's argument is how can this

5    person pose a danger if you no-papered the case in other

6    circumstances.  That's what I believe the defendant's

7    argument to be.

8         Am I wrong, Ms. Jacob?

9         MS. JACOB:  No, Your Honor.

10        MS. McCRANIE:  Right.  I understand, Your

11   Honor, but at the time when a case comes into the

12   office, I think the first consideration is -- well

13   there's a variety of factors, right, but several of

14   which is:  Are we going to -- I don't want to speak for

15   the people who papered or not papered this case, but

16   some of the considerations could be Fourth Amendment and

17   does not have anything to do with a person's

18   dangerousness, right?

19        If we believe that we might have Fourth Amendment

20   issues and that this case might be suppressed, then the

21   dangerous calculation does not weigh in at that point.

22        THE COURT:  What are -- what, if any,

23   distinguishing factors does this case have from *Taylor*?

24        MS. McCRANIE:  So I quickly scanned *Taylor*.  If

25   I can just --

1          THE COURT:  I mean, this is a case you're

2    relying on, right?  So I presume you would know the

3    facts of the case.

4          MS. McCRANIE:  Your Honor, my understanding is

5    that in that case, the suppression was a big

6    consideration, in that the -- the bare impact of the

7    weight of the evidence, right, is that the -- I think

8    Your Honor's question is a factual distinction.

9          THE COURT:  No, I'm just wondering if you have

10   a response to the defendant's argument that *Taylor*

11   actually helps the defense as opposed to the government.

12   But if you're just reading the case now, I'm not going

13   to take the time, you know -- you can read it at a

14   break, if you have something to say when I come back,

15   but, you know, I expect you all to know what the facts

16   of the cases you're relying on are.

17          MS. McCRANIE:  Yes, Your Honor.

18          THE COURT:  Defense also makes an argument that

19   you haven't articulated any future dangerousness, as

20   required by *Munchel,* and I didn't hear one either in

21   your opening argument.

22          MS. McCRANIE:  So I think in considering the

23   future dangerousness, we also look at the past conduct,

24   which I have highlighted.  And here, we do believe that

25   there -- although he has not been charged with

1     conspiracy yet, but it does appear that there was an

2     ongoing conspiracy to distribute these narcotics, and

3     then the firearms possession, the arsenal that was used

4     to protect these drugs.

5         If released -- and, again, released back to the

6     same household where his mother resides, where the

7     same -- where he goes back to the same job where he was

8     able to amass $50,000 in what appears to be drug money

9     while still working full-time, suggests that he will

10    continue to do so.  He'll just go back to the same

11    lifestyle, the same ability to distribute these

12    narcotics, and the same house that he still lives with

13    his mother.  Nothing would have changed.

14        If he were to be released today, it would be as

15    if -- no different than the conditions he were in on

16    March 21st before he was arrested, to the same

17    household, under the same conditions that --

18             THE COURT:  That's not true.  That's not true.

19    You're saying that if I -- what I need to hear from you,

20    Ms. McCranie, if the Court -- then you're essentially

21    saying that the Court can never impose conditions of

22    release that could mitigate any dangerousness.

23        I mean, what can you point to that notwithstanding

24    conditions of release, that the defendant still poses a

25    danger to the community?

1          MS. McCRANIE:  I think that's illustrated by

2     his past conduct.

3          THE COURT:  Okay.  Anything else?

4          MS. McCRANIE:  And the fact that we do believe

5     there was an ongoing conspiracy --

6          THE COURT:  Is the possession of six to seven

7     ghost guns a problem?

8          MS. McCRANIE:  Yes, Your Honor.  That's --

9          THE COURT:  And reflect a level of deception?

10         MS. McCRANIE:  Yes, Your Honor --

11         THE COURT:  Okay.

12         MS. McCRANIE:  -- and that's part of the past

13    conduct, yes.  And I apologize for not articulating more

14    clearly, but everything that we discussed in terms of

15    the past conduct I think suggests his dangerousness

16    going forward.

17         THE COURT:  Okay.  Is there anything else?

18         MS. McCRANIE:  Your Honor, I would just like to

19    say that, again, living with the third- -- the mother

20    being in the same home is not a viable third-party

21    custodian.  He will continue to be the same grown man

22    who keeps things private.  And even with the Ring camera

23    the defense mentioned, none of that detected any of the

24    suspicious activity, so none of that will change if he

25    were to return to the same home.

1          THE COURT:  Is the five-year mandatory

2     minimum -- which count does that connect to?

3          MS. McCRANIE:  That would be Count 2.

4          THE COURT:  Okay.  And there was an argument

5     made in the other case, the Jevaughn Mark case, that he

6     might be facing additional mandatory minimums based on

7     potential superseding indictment.

8        Is that the case here?

9          MS. McCRANIE:  Potentially, Your Honor, if we

10    were to join the two cases under a conspiracy theory.

11         THE COURT:  Okay.  And what would the potential

12    mandatory minimum there be under a conspiracy theory?

13         MS. McCRANIE:  It potentially would be a

14    ten-year mandatory minimum for over 400 grams of

15    fentanyl.

16         THE COURT:  Okay.  Thank you.  Anything else?

17        All right.  I'm going to take a brief recess.  I'll

18    be back.

19        (Court in recess, 4:29 p.m.)

20        (After recess, 5:13 p.m.)

21         THE COURT:  Okay.  Thank you all for your

22    patience.  I wanted to take a close look at some

23    things.

24        I'm going to give a summary for my ruling now, and

25    we'll follow up with a written order.  I'm going to be

1    granting the government's motion for the following

2    reasons:

3        The government moves for detention under 18 U.S.C.

4    3142(f)(1)(C) and (f)(1)(E).  Under the Bail Reform Act,

5    the presumption is that an individual should be released

6    pending trial unless the Court finds that no condition

7    or combination of conditions will reasonably assure the

8    appearance of the person as required and the safety of

9    any other person in the community.

10        That's 18 U.S.C. 3142(e).

11        Before me is a rebuttal presumption case under

12    18 U.S.C. 3142(e)(3)(A) and (B), that no condition or

13    combination of conditions can effectively ensure the

14    defendant's appearance in this case and otherwise

15    protect the safety of the community.

16        Once triggered, the presumption operates to impose

17    a burden on the defendant to offer some credible

18    evidence contrary to the statutory presumption, but

19    regardless of whether the presumption applies, it's the

20    government's ultimate burden to prove that no condition

21    or combination of conditions can assure the safety of

22    the community and defendant's appearance at hearings.

23        The government must establish by a preponderance of

24    the evidence that Mr. Mark poses a serious risk of

25    flight, and the government must establish by clear and

1     convincing evidence that Mr. Mark poses a danger to the

2     community that cannot be mitigated by any conditions of

3     release.  Those cases are *Munchel* and *Xulam*.

4         In determining whether the government has met its

5     burden, the Court must consider certain factors outlined

6     in the Bail Reform Act, including the nature and

7     circumstances of the offense charged, the weight of the

8     evidence against the person, the history and

9     characteristics of the person, and the nature and

10    seriousness of the danger to any person or the community

11    that would be posed by the person's release.

12        In examining these four factors, as well as the

13    rebuttal presumption in this case, I find that the

14    government has met its burden and the defense has

15    rebutted the presumption as to dangerousness by the

16    fact -- by virtue of the factors the defendant has

17    shown, including that he has no prior adult

18    convictions.

19        However, I find that that presumption is a fact --

20    is not -- that he did not overcome the government's

21    ultimate showing, which was met by clear and convincing

22    evidence that the defendant poses a danger to the

23    community that cannot be mitigated by any condition or

24    combination of conditions.

25        On that basis, I will be granting the government's

1    request for pretrial detention.  I do not find that the

2    government has met its burden to show by a preponderance

3    of the evidence that the defendant poses a serious risk

4    of flight.  There was no serious argument made in

5    support of this -- in support of this, and I did not see

6    any facts here that warranted a finding that defendant

7    poses a serious risk of flight.

8         So with respect to the risk of flight issue, again,

9    I'm not granting the motion on that basis, but will take

10   the presumption into account in the consideration of the

11   four factors, which are the nature and circumstances of

12   the offense.  And here, there is substantial evidence

13   that Mr. Mark was engaged in the selling of narcotics,

14   particularly fentanyl, which, as we all know, is a

15   dangerous and deadly narcotic that currently is one of

16   the leading, if not the leading cause of overdose deaths

17   in the country.

18        There was a search warrant that was executed, and

19   Mr. Mark admitted to everything in the bedroom that was

20   found being his or being in his possession.  And items

21   that were found include four digital scales, large

22   quantities of Zips used for packaging narcotics for

23   distribution, and approximately $50,000 in cash.  This

24   is all highly indicative of narcotics or drug

25   trafficking.

1           I will also note that there were portions of a

2      white-powdered substance, which tested field-positive

3      for fentanyl, recovered next to or with a loaded firearm

4      that was stored in a shoulder bag hanging from the bed

5      rail of defendant's bed.

6           The Zips that were located with the loaded gun had

7      the same markings of spades that were on the Zip bags

8      that Mr. Jevaughn Mark used to sell to an undercover

9      officer, which contained fentanyl and were sold by

10     Mr. Jevaughn Mark as ketamine.

11          I have note -- I also note that there were a

12     significant amount of firearms found in Mr. Mark's

13     bedroom.  This is a significant, significant factor in

14     the Court's consideration today, because the firearms --

15     there were seven of them -- they included both pistols

16     and assault-style rifles, there were nearly a thousand

17     rounds of ammunition and a drum magazine, all recovered

18     from Mr. Mark's bedroom alone.

19          There was also a significant number of the

20     firearms, which I believe the government alleged are --

21     six of the seven are ghost guns.

22          Now, ghost guns are privately manufactured guns or

23     guns which have the serial number marked off so that law

24     enforcement cannot track or detect or trace these guns.

25     This is a significant factor, again, in the Court's

1   consideration.

2        Mr. Mark's possession of these ghost guns appears

3   to be no accident.  Based on the messages I've read, he

4   appears to have sought them out.

5        I will also note that based on the messages that

6   were shown, text messages between Mr. Mark and his

7   brother Jevaughn, Mr. Angelo Mark was clearly willing to

8   secure guns and accessories for his brother, who was

9   prohibited from possessing firearms due to a prior

10  felony conviction, and was willing to evade the law in

11  that fashion.

12       There is -- I'll just note, a number -- there were

13  a number of messages, but I'll point to an October 2022

14  text where Mr. Mark told his brother he was going to go

15  to the gun show the next day, and did his brother need

16  anything from that.

17       There was also a firearm -- again, it was a ghost

18  gun -- with a sight attachment recovered from the

19  defendant's bedroom that had some connection to an NIBIN

20  lead that had an unlawful discharge investigation in

21  January 2022, where there were allegedly two shots fired

22  and detected by the ShotSpotter in Southeast,

23  Washington, D.C.

24       I'll note that this case involves a five-year

25  mandatory minimum.  And based on the alleged conduct,

1    defendant may be facing up to 10 to 15 years of a

2    mandatory minimum sentence.  So this is an extremely

3    serious set of circumstances and offenses.

4        There isn't -- there was an argument made that this

5    case is similar to the *Thomas* case, which was discussed

6    during the hearing.  And I did look up and reviewed the

7    facts of that case, and I find that that case is not on

8    all fours with this case.

9        In that case, the defendant -- in the *Thomas* case,

10    the defendant was alleged to have been in possession, as

11    the defense argued at that time, mostly constructive

12    possession of one gun, which had a serial number still

13    intact.  Here, there were multiple guns in Mr. Mark's

14    bedroom.  He admitted to the contents of the -- to the

15    bedroom being his and the contents being his, including

16    multiple ghost guns, and as well as one ghost gun found

17    on Mr. Mark's person during an arrest in 2023.

18        This case also deals with Mr. Mark's possession of

19    assault-style rifles, which were not present in the

20    *Thomas* case, as far as I could tell.

21        The *Taylor* case also did not deal with ghost guns

22    or multiple ghost guns, as this case does.  Moreover, in

23    the *Taylor* case, there were significant suppression

24    issues that led the Court ultimately to release

25    Mr. *Taylor*, including significant issues that the

1   defendant was actually not in possession of the

2   contraband in that case, and that there was a plausible

3   link to a third-party having actually owned the

4   contraband in the *Taylor* case.  Again, those

5   circumstances are not present here.  I find that the

6   *Taylor* and *Thomas* case are not persuasive to the facts

7   of this case.

8       With respect to the weight of the evidence, the

9   weight of the evidence is strong.  The defendant claimed

10  ownership of the bedroom in which all the contraband was

11  recovered.  And the defendant unlocked the safe in his

12  room, and a wallet was found inside the bedroom.

13      There were also items that had Mr. Mark's name on

14  them, and the defendant is believed to be the only

15  occupant of that bedroom.

16      The assault-style rifle's drum magazine with 48

17  rounds and ghost guns with no serial numbers, four

18  digital scales, the Zip packaging, the cash, and the

19  narcotics that tested positive for fentanyl -- or the

20  substance that tested positive for fentanyl, were all

21  recovered in Mr. Mark's bedroom.

22      The history and characteristics here -- I will note

23  that Mr. Mark does not appear to have any prior adult

24  convictions, and I did take that into account.  And for

25  that reason and the fact that he was employed, I found

1    that he did meet the -- what's a low requirement, a low

2    showing that's required of defendant to rebut the

3    presumption in a rebuttal presumption case, but

4    ultimately, the facts of the case led me to grant the

5    government's motion.  And although there are no adult

6    convictions, there are prior arrests, including one

7    particular recent prior arrest that has factors that are

8    closely connected to the possession -- the firearms that

9    Mr. Mark was found to be in possession of.

10        That prior arrest I'm referring to -- that I took

11    into account was in October 2023 when Mr. Mark was

12    arrested after law enforcement responded to a report of

13    13 shots fired on Martin Luther King Avenue.

14        The police tracked Mr. Mark's car down based on

15    windshield markings of gunshots, and after conducting a

16    protective pat down, found Mr. Mark to be in possession

17    of a ghost gun.

18        Again, the long-term use of ghost guns pose a

19    danger to the community and reflect a participation in a

20    continued elevated dangerous conduct and a willingness

21    to attempt to evade any tracing by law enforcement.

22        The ghost gun that was found in -- or the use of

23    the ghost gun -- or the possession of the ghost gun and

24    potential use in October 2023 is consistent with the

25    fact that he possessed a large number of ghost guns and

1    was found in possession of those ghost guns in

2    March 2024.

3        There are other arrests in Mr. Mark's background,

4    including an arrest in June of 2017 for conduct that was

5    reported by Mr. Mark's girlfriend, which I will not

6    place on the record.  And in January 2013, I note that

7    there is a conviction for obstruction of justice.  And

8    although that was -- it's not clear whether or not that

9    conviction was set aside under the Youth Act, but he

10   was -- this was a long period of time ago -- I will note

11   that that obstruction of justice conviction is for

12   intimidating an eyewitness who allegedly witnessed

13   Mr. Mark engaging in criminal activity.

14       The nature and seriousness of the danger that would

15   be posed by Mr. Mark's release, I do find that there is

16   a significant future danger to the community posed by

17   Mr. Mark's release and that no condition or combination

18   of conditions could mitigate that danger.

19       The sheer number of guns, particularly ghost guns,

20   reflects a willingness to attempt to evade law

21   enforcement detection or tracing.  And the fact that,

22   frankly, there was a gun loaded in Mr. Mark's bedroom,

23   reflects a danger to the inhabitants of that home,

24   including a minor son who might be visiting on a regular

25   basis.

1          And although Mr. Mark does not have prior adult

2     convictions, the conduct alleged in this case is not

3     mere possession of one handgun.  The volume, style, type

4     of firearms, as well as the fact that they were ghost

5     guns, combined with the alleged clear drug trafficking

6     conduct poses what I mentioned in an earlier hearing

7     today.  The perfect storm of factors reflecting

8     dangerousness to the community.

9          So on that basis, I will grant the motion.

10         Do we have a next date in this case, Ms. Butler?

11         DEPUTY COURTROOM CLERK:  We do not, Your Honor,

12    as this is still a magistrate case.

13         THE COURT:  Okay.  We should set a status

14    hearing, a controlled status hearing in this case.

15         Do you all -- have you discussed the next --

16         MS. McCRANIE:  Your Honor, I think this is

17    still a complaint case, so I was going to propose a

18    preliminary hearing.

19         THE COURT:  Okay.

20         MS. McCRANIE:  Although I understand --

21         THE COURT:  No, no, very well.  I'm sorry, I

22    did -- I should have mentioned that.

23         When -- Ms. Jacob, when would you like to have that

24    hearing?

25         MS. JACOB:  Does the Court have availability in

1   the normal 14-day course?

2              THE COURT:  Sure.  I'm sure we do.

3        Ms. Butler, when would be a date in the next 7 to

4   14 days?

5        Ms. Jacob, would you like to be on the outer limit

6   of that so you can prepare or would you like it to be

7   next week?

8              MS. JACOB:  Does the Court have availability

9   April 11th?  And the (inaudible) --

10             DEPUTY COURTROOM CLERK:  Yes, and the Court has

11  availability.  We can set this for 2:00 p.m., before

12  Judge Faruqui.

13             MS. JACOB:  That works.

14             THE COURT:  Okay.  So we will set this for a

15  preliminary hearing on April 11th before Judge Faruqui.

16        Excuse me.  Ms. McCranie, does the government have

17  a position under the Speedy Trial Act?

18             MS. McCRANIE:  Yes, Your Honor.  We would ask

19  that we toll from today's date until the preliminary

20  hearing date.

21             THE COURT:  Okay.  On what basis?

22             MS. McCRANIE:  So that we can provide discovery

23  and discuss a resolution to this case.

24             THE COURT:  Okay.  Ms. Jacob.

25             MS. JACOB:  Your Honor, there's no objection at

1      this time.

2                THE COURT:  Okay.  In light of the fact that

3      there's no objection and in the interest of justice, I

4      will toll the time under the speedy trial clock.

5           So Mr. Mark, just to give you kind of a roadmap of

6      what the next hearing is going to be, there will be

7      what's called a preliminary hearing in your case on

8      April 11th.  It will be before one of the other

9      magistrate judges.  And during the preliminary hearing,

10     the government will be required to put up evidence, and

11     your attorney can examine or contest it, to support the

12     charges that have been brought against you.  And if you

13     have questions at any time, you can ask Ms. Jacob

14     leading up to that hearing, okay?

15          Again, I would just like to thank Ms. Delahunt for

16     being here.  Again, I'm certain that this is not --

17     these circumstances are not easy, and I appreciate the

18     time and your presence here, ma'am.

19          Okay.  Is there anything further?

20                MS. McCRANIE:  Not from the government.

21                MS. JACOB:  No, Your Honor.

22                THE COURT:  Okay.  Thank you.

23          You all may be excused.

24          (Court adjourned 5:29 p.m.)

25

1    This hearing was digitally recorded using FTR and

2  is, therefore, subject to the limitations associated

3  with sound/audio quality while using technology, i.e.,

4  slow connection, static interference, overlapping

5  speakers, etc.

6

7

8                        CERTIFICATE

9

10    I, Chandra Kean, RMR, certify that the foregoing is

11  a correct transcription from the record of proceedings

12  in the above-titled matter.

13

14  _____        March 24, 2025

15     Chandra Kean, RMR                  DATE

16

17

18

19

20

21

22

23

24

25

## $

**$50,000** [3] - 13:10, 31:8, 36:23
**$75** [1] - 7:5

## 1

**10** [1] - 39:1
**11th** [3] - 44:9, 44:15, 45:8
**13** [2] - 9:25, 41:13
**14** [2] - 7:5, 44:4
**14-day** [1] - 44:1
**14-gram** [1] - 7:8
**15** [1] - 39:1
**15th** [1] - 24:23
**18** [4] - 16:2, 34:3, 34:10, 34:12
**19** [1] - 16:3
**1:00** [1] - 5:1
**1:30** [2] - 5:2, 5:3

## 2

**2** [1] - 33:3
**2012** [1] - 16:2
**2013** [4] - 11:15, 16:3, 27:22, 42:6
**2017** [1] - 42:4
**2018** [1] - 14:22
**2020** [1] - 7:12
**2021** [1] - 8:14
**2022** [9] - 6:24, 7:25, 8:3, 10:16, 24:23, 25:4, 25:15, 38:13, 38:21
**2023** [8] - 5:17, 6:4, 6:12, 9:9, 28:18, 39:17, 41:11, 41:24
**2024** [1] - 42:2
**21st** [1] - 31:16
**22** [1] - 19:6
**22-MJ** [1] - 19:4
**22nd** [1] - 3:5
**2329** [1] - 3:3
**23rd** [1] - 9:9
**24-108** [1] - 2:4
**289** [1] - 14:21
**2:00** [3] - 5:1, 44:11

## 3

**30** [1] - 21:23
**3142(e)** [1] - 34:10
**3142(e)(3)(A** [1] - 34:12
**3142(f)(1)(C** [1] - 34:4
**31st** [3] - 6:12, 9:9, 9:21
**36** [2] - 12:2, 27:23

## 36

**36-month** [1] - 11:17
**3:49** [1] - 2:2
**3d** [1] - 14:21

## 4

**400** [1] - 33:14
**48** [2] - 4:15, 40:16
**4:29** [1] - 33:19

## 5

**5,000** [2] - 13:12, 13:14
**50** [1] - 22:11
**50,000** [2] - 13:12, 13:19
**55** [1] - 14:22
**5:13** [1] - 33:20
**5:29** [1] - 45:24

## 7

**7** [1] - 44:3

## 8

**800** [1] - 8:19

## 9

**9-millimeter** [3] - 5:24, 6:2, 6:3
**924(c)** [1] - 28:12

## A

**abide** [3] - 20:4, 21:5, 23:7
**ability** [1] - 31:11
**able** [6] - 19:1, 20:19, 27:7, 27:9, 28:2, 31:8
**absolutely** [1] - 22:1
**accept** [2] - 17:6, 25:16
**accessories** [1] - 38:8
**accident** [1] - 38:3
**according** [1] - 22:7
**account** [3] - 36:10, 40:24, 41:11
**Act** [5] - 28:1, 34:4, 35:6, 42:9, 44:17
**activities** [1] - 5:12
**activity** [2] - 32:24, 42:13
**actual** [1] - 4:1
**addition** [1] - 25:12
**additional** [1] - 33:6
**additionally** [1] - 23:23
**address** [1] - 3:7
**adjourned** [1] - 45:24

**admitted** [2] - 36:19, 39:14
**adult** [4] - 35:17, 40:23, 41:5, 43:1
**afternoon** [6] - 2:10, 2:12, 2:13, 2:16, 2:17, 2:18
**ago** [4] - 16:20, 17:2, 24:24, 42:10
**agree** [1] - 21:7
**agreed** [1] - 19:14
**Alice** [1] - 20:11
**allegation** [2] - 24:20, 25:18
**allegations** [5] - 13:23, 19:18, 20:3, 26:16, 27:1
**alleged** [9] - 20:24, 20:25, 22:21, 24:2, 37:20, 38:25, 39:10, 43:2, 43:5
**allegedly** [4] - 16:5, 19:16, 38:21, 42:12
**allow** [1] - 24:9
**allowed** [1] - 14:11
**alone** [1] - 37:18
**amass** [1] - 31:8
**amazing** [1] - 27:7
**ameliorate** [2] - 25:25, 27:4
**Amendment** [3] - 28:25, 29:16, 29:19
**America** [1] - 2:5
**ammunition** [1] - 37:17
**amount** [1] - 37:12
**analogous** [4] - 12:24, 13:2, 18:6, 27:5
**Angelo** [41] - 2:5, 2:14, 3:1, 3:3, 3:8, 3:9, 3:22, 3:23, 4:9, 5:10, 5:19, 5:20, 6:9, 6:12, 6:14, 6:22, 6:25, 7:1, 7:8, 7:14, 7:21, 8:15, 8:18, 8:23, 9:5, 9:18, 10:5, 10:22, 11:24, 12:13, 13:8, 14:1, 15:24, 16:2, 19:19, 19:21, 21:4, 25:8, 27:16, 27:22, 38:7
**apart** [1] - 27:23
**apologize** [2] - 13:4, 32:13
**App** [1] - 7:13
**appeal** [1] - 28:20
**appealed** [1] - 19:7
**appear** [4] - 9:1, 17:14, 31:1, 40:23
**appearance** [5] - 14:1,

**24:8, 34:8, 34:14, 34:22**
**applies** [1] - 34:19
**appreciate** [8] - 24:7, 24:10, 24:14, 24:16, 27:19, 45:17
**apprehension** [1] - 6:16
**April** [3] - 44:9, 44:15, 45:8
**argued** [1] - 39:11
**argues** [1] - 12:24
**arguing** [2] - 17:5, 18:5
**argument** [13] - 2:22, 17:4, 25:17, 27:9, 29:3, 29:4, 29:7, 30:10, 30:18, 30:21, 33:4, 36:4, 39:4
**arrest** [8] - 6:12, 16:4, 16:10, 16:14, 39:17, 41:7, 41:10, 42:4
**arrested** [3] - 9:8, 9:22, 11:16, 31:16, 41:12
**arrests** [7] - 14:8, 14:12, 16:2, 16:17, 17:6, 41:6, 42:3
**arsenal** [2] - 13:7, 31:3
**articulated** [1] - 30:19
**articulating** [1] - 32:13
**aside** [6] - 25:4, 27:25, 28:6, 42:9
**assault** [4] - 3:11, 37:16, 39:19, 40:16
**assault-style** [4] - 3:11, 37:16, 39:19, 40:16
**associated** [2] - 3:7, 13:8
**assure** [6] - 13:25, 14:1, 24:5, 26:8, 34:7, 34:21
**assured** [1] - 27:3
**attachment** [1] - 38:18
**attachments** [1] - 6:22
**attempt** [2] - 41:21, 42:20
**attention** [1] - 12:3
**attorney** [1] - 45:11
**attorneys** [1] - 15:13
**availability** [3] - 43:25, 44:8, 44:11
**Avenue** [1] - 41:13

## B

**background** [2] - 3:2, 42:3

**bag** [6] - 4:6, 5:22, 10:24, 12:14, 37:4
**bagged** [1] - 6:10
**bags** [2] - 8:25, 37:7
**Bail** [2] - 34:4, 35:6
**ball** [1] - 5:24
**ballistics** [1] - 10:19
**bare** [1] - 30:6
**base** [1] - 15:10
**based** [7] - 15:2, 16:25, 33:6, 38:3, 38:5, 38:25, 41:14
**basis** [6] - 11:25, 35:25, 36:9, 42:25, 43:9, 44:21
**bed** [5] - 10:24, 11:9, 12:14, 37:4, 37:5
**bedroom** [6] - 3:24, 11:2, 13:10, 19:19, 22:1, 36:19, 37:13, 37:18, 38:19, 39:14, 39:15, 40:10, 40:12, 40:15, 40:21, 42:22
**behalf** [2] - 2:14, 2:19
**believes** [1] - 14:4
**best** [2] - 27:5, 27:10
**between** [2] - 19:16, 38:6
**big** [4] - 4:10, 23:9, 30:5
**bit** [1] - 11:15
**black** [2] - 3:19, 4:6
**boot** [2] - 7:9
**bottom** [2] - 6:7, 6:8
**box** [1] - 5:18
**break** [1] - 30:14
**breaking** [1] - 11:21
**brick** [1] - 11:22
**brief** [2] - 2:22, 33:17
**bring** [1] - 12:3
**bringing** [1] - 10:13
**brother** [14] - 3:1, 3:7, 3:20, 4:1, 6:9, 6:15, 6:18, 7:15, 11:20, 13:9, 38:7, 38:8, 38:14, 38:15
**brother's** [1] - 15:24
**brothers** [4] - 11:24, 12:4, 20:21, 21:3
**brought** [2] - 21:15, 45:12
**building** [1] - 6:5
**built** [1] - 6:10
**bullet** [2] - 10:6, 10:17
**bumming** [1] - 20:15
**burden** [7] - 15:6, 18:1, 34:17, 34:20, 35:5, 35:14, 36:2
**busy** [1] - 21:17
**Butler** [2] - 43:10, 44:3

**buys** [1] - 3:6

## C

**calculation** [1] - 29:21
**camera** [1] - 32:22
**cannot** [5] - 7:21, 17:5, 35:2, 35:23, 37:24
**capacity** [2] - 4:15, 10:8
**car** [5] - 19:17, 25:19, 25:20, 25:24, 41:14
**cared** [1] - 23:4
**careful** [1] - 13:16
**caring** [2] - 23:3, 23:12
**carry** [1] - 9:6
**carrying** [1] - 28:19
**Case** [1] - 2:4
**case** [83] - 2:25, 4:3, 9:10, 11:20, 12:6, 13:23, 14:10, 14:13, 14:16, 14:17, 14:18, 14:20, 15:21, 15:24, 16:3, 16:15, 17:1, 17:25, 18:2, 18:8, 18:9, 18:11, 18:14, 18:15, 18:16, 18:17, 18:18, 19:2, 19:14, 19:18, 20:25, 24:5, 26:2, 27:5, 27:10, 28:9, 28:15, 28:25, 29:2, 29:5, 29:11, 29:15, 29:20, 29:23, 30:1, 30:3, 30:5, 30:12, 33:5, 33:8, 34:11, 34:14, 35:13, 38:24, 39:5, 39:7, 39:8, 39:9, 39:18, 39:20, 39:21, 39:22, 39:23, 40:2, 40:4, 40:6, 40:7, 41:3, 41:4, 43:2, 43:10, 43:12, 43:14, 43:17, 44:23, 45:7
**cases** [11] - 12:23, 12:24, 13:2, 13:5, 26:24, 26:25, 28:22, 28:23, 30:16, 33:10, 35:3
**Cash** [1] - 7:13
**cash** [4] - 7:13, 13:10, 36:23, 40:18
**certain** [2] - 35:5, 45:16
**chamber** [4] - 3:14, 3:15, 10:9, 11:12
**chance** [1] - 13:5
**change** [2] - 15:2, 32:24

**changed** [1] - 31:13
**characteristics** [6] - 19:13, 19:21, 19:22, 23:11, 35:9, 40:22
**charge** [2] - 12:1, 29:1
**charged** [5] - 9:8, 20:25, 28:10, 30:25, 35:7
**charges** [1] - 45:12
**cheaper** [1] - 12:16
**chosen** [1] - 22:5
**chronologically** [1] - 6:7
**circumstances** [10] - 15:2, 20:23, 21:3, 21:20, 29:6, 35:7, 36:11, 39:3, 40:5, 45:17
**citation** [1] - 14:19
**cite** [2] - 17:17, 18:3
**cited** [3] - 14:10, 14:13, 18:21
**cites** [2] - 12:23, 17:16
**claim** [1] - 3:24
**claimed** [1] - 40:9
**clear** [6] - 15:6, 17:7, 34:25, 35:21, 42:8, 43:5
**clearly** [2] - 32:14, 38:7
**CLERK** [3] - 2:3, 43:11, 44:10
**clients** [3] - 8:8, 8:10, 8:12
**clock** [1] - 45:4
**close** [1] - 33:22
**closely** [1] - 41:8
**closet** [1] - 11:5
**cocaine** [2] - 5:25, 8:17
**code** [1] - 8:4
**Coley** [1] - 2:11
**combination** [5] - 34:7, 34:13, 34:21, 35:24, 42:17
**combinations** [1] - 13:25
**combined** [1] - 43:5
**comments** [1] - 12:20
**community** [11] - 14:1, 31:25, 34:9, 34:15, 34:22, 35:2, 35:10, 35:23, 41:19, 42:16, 43:8
**compelling** [4] - 19:12, 19:13, 19:23, 20:8
**complaint** [5] - 4:17, 4:18, 13:13, 13:15, 43:17

**concern** [6] - 21:9, 21:13, 23:6, 23:25, 26:1, 27:4
**concerning** [2] - 4:9, 25:12
**conclude** [2] - 24:25, 27:16
**condition** [7] - 23:16, 25:23, 34:6, 34:12, 34:20, 35:23, 42:17
**conditions** [20] - 13:25, 18:6, 20:2, 20:4, 21:5, 23:7, 24:3, 26:7, 26:14, 27:4, 31:15, 31:17, 31:21, 31:24, 34:7, 34:13, 34:21, 35:2, 35:24, 42:18
**conduct** [13] - 12:5, 17:7, 26:13, 28:18, 30:23, 32:2, 32:13, 32:15, 38:25, 41:20, 42:4, 43:2, 43:6
**conducting** [1] - 41:15
**confirmation** [1] - 10:19
**confirmed** [2] - 13:18, 18:7
**connect** [1] - 33:2
**connected** [1] - 41:8
**connection** [2] - 16:8, 38:19
**conservative** [2] - 13:15, 13:17
**consider** [9] - 14:12, 16:14, 17:4, 17:6, 17:13, 24:13, 24:16, 28:17, 35:5
**consideration** [6] - 17:16, 29:12, 30:6, 36:10, 37:14, 38:1
**considerations** [1] - 29:16
**considering** [2] - 17:17, 30:22
**considers** [1] - 14:6
**consistent** [3] - 3:19, 10:11, 41:24
**conspiracy** [6] - 20:25, 31:1, 31:2, 32:5, 33:10, 33:12
**constructive** [1] - 39:11
**contained** [1] - 37:9
**contents** [2] - 39:14, 39:15
**contest** [1] - 45:11
**context** [1] - 8:24
**continue** [2] - 26:15, 31:10, 32:21

**continued** [1] - 41:20
**contraband** [5] - 23:18, 24:2, 40:2, 40:4, 40:10
**contrary** [1] - 34:18
**contrast** [1] - 16:24
**contributing** [4] - 20:9, 20:10, 20:16, 23:13
**control** [1] - 25:24
**controlled** [2] - 3:6, 43:14
**convict** [1] - 17:22
**conviction** [9] - 12:7, 27:22, 27:25, 28:18, 28:21, 38:10, 42:7, 42:9, 42:11
**convictions** [8] - 15:22, 19:24, 27:17, 28:16, 35:18, 40:24, 41:6, 43:2
**convincing** [3] - 15:7, 35:1, 35:21
**copy** [4] - 4:23, 14:23
**counsel** [3] - 4:23, 9:23, 28:15
**Count** [1] - 33:3
**count** [2] - 4:11, 33:2
**counted** [2] - 13:14, 13:18
**countless** [1] - 8:25
**country** [1] - 36:17
**couple** [1] - 8:24
**course** [5] - 15:11, 20:18, 22:18, 23:14, 44:1
**Court** [42] - 2:2, 5:14, 9:10, 14:6, 14:23, 15:12, 15:25, 16:14, 16:19, 17:5, 17:7, 17:13, 18:16, 18:17, 20:1, 20:4, 20:12, 20:13, 20:18, 21:6, 21:13, 21:19, 22:16, 22:21, 23:14, 24:4, 24:5, 25:7, 26:6, 26:9, 27:3, 28:22, 31:20, 31:21, 33:19, 34:6, 35:5, 39:24, 43:25, 44:8, 44:10, 45:24
**court** [3] - 14:25, 15:1, 26:17
**COURT** [68] - 2:12, 2:16, 2:20, 3:25, 4:8, 4:25, 5:4, 5:8, 6:1, 7:23, 8:1, 9:5, 9:11, 9:16, 11:1, 11:8, 11:13, 12:22, 13:2, 13:12, 13:20, 14:19,

17:3, 17:10, 18:2, 18:5, 18:12, 18:22, 18:24, 19:1, 19:4, 21:7, 22:6, 22:11, 22:15, 24:7, 25:3, 26:3, 27:5, 27:18, 27:25, 28:8, 28:13, 29:3, 29:22, 30:1, 30:9, 30:18, 31:18, 32:3, 32:6, 32:9, 32:11, 32:17, 33:1, 33:4, 33:11, 33:16, 33:21, 43:13, 43:19, 43:21, 44:2, 44:14, 44:21, 44:24, 45:2, 45:22
**Court's** [7] - 12:3, 14:11, 23:6, 26:1, 26:22, 37:14, 37:25
**COURTROOM** [3] - 2:3, 43:11, 44:10
**courtroom** [2] - 2:6, 27:7
**CPWL** [1] - 9:10
**CR** [3] - 18:8, 18:9, 27:6
**credible** [1] - 34:17
**criminal** [4] - 26:12, 27:13, 27:15, 42:13
**custodian** [3] - 23:24, 25:25, 32:21
**custodianship** [1] - 21:10
**custody** [4] - 2:15, 22:8, 22:11, 22:24

## D

**D.C** [1] - 38:23
**danger** [14] - 15:7, 16:19, 16:21, 17:1, 29:5, 31:25, 35:1, 35:10, 35:22, 41:19, 42:14, 42:16, 42:18, 42:23
**dangerous** [4] - 9:2, 29:21, 36:15, 41:20
**dangerousness** [7] - 29:18, 30:19, 30:23, 31:22, 32:15, 35:15, 43:8
**date** [5] - 7:23, 43:10, 44:3, 44:19, 44:20
**dated** [2] - 6:4, 11:15
**days** [2] - 23:2, 44:4
**deadliest** [1] - 9:4
**deadly** [1] - 36:15
**deal** [1] - 39:21
**dealing** [1] - 5:12
**deals** [1] - 39:18

deaths [1] - 36:16
deception [1] - 32:9
decide [1] - 29:1
decided [2] - 15:1,
16:21
decision [3] - 15:10,
16:22, 16:23
decision-making [2] -
16:22, 16:23
defendant [21] - 2:6,
12:22, 12:24, 14:14,
15:1, 15:3, 15:18,
31:24, 34:17, 35:16,
35:22, 36:3, 36:6,
39:1, 39:9, 39:10,
40:1, 40:9, 40:11,
40:14, 41:2
defendant's [9] -
12:19, 29:3, 29:4,
29:6, 30:10, 34:14,
34:22, 37:5, 38:19
defendants [1] - 13:3
defense [9] - 4:23,
9:23, 15:12, 28:14,
30:11, 30:18, 32:23,
35:14, 39:11
Delahunt [4] - 20:11,
21:15, 24:4, 45:15
Delahunt's [1] - 24:8
delay [1] - 19:7
Department [1] - 20:7
deputy [1] - 27:7
DEPUTY [3] - 2:3,
43:11, 44:10
detain [2] - 15:1,
16:20
detained [1] - 20:18
detect [1] - 37:24
detected [2] - 32:23,
38:22
detection [2] - 25:11,
42:21
detention [12] - 2:7,
2:20, 4:13, 4:21,
10:20, 14:15, 14:16,
15:13, 16:25, 17:5,
34:3, 36:1
determining [1] - 35:4
difference [1] - 19:20
differences [1] - 19:15
different [7] - 4:16,
8:12, 20:24, 22:3,
28:20, 29:4, 31:15
difficult [2] - 23:21,
24:10
digital [4] - 4:10, 8:25,
36:21, 40:18
discharge [1] - 38:20
discovery [1] - 44:22
discuss [2] - 6:11,

44:23
discussed [4] - 15:16,
32:14, 39:5, 43:15
discussing [2] - 6:5,
8:11
discussion [4] - 6:2,
7:11, 8:5, 8:6
dismissed [1] - 38:18
distinct [1] - 3:18
distinction [1] - 30:8
distinguish [1] - 13:6
distinguishing [1] -
29:23
distribute [4] - 9:2,
14:18, 31:2, 31:11
distribution [5] - 4:14,
8:22, 15:19, 27:1,
36:23
district [1] - 18:7
District [1] - 18:16
docket [2] - 18:8,
18:13
documents [1] - 18:19
done [1] - 11:23
down [3] - 10:8, 41:14,
41:16
drive [1] - 25:24
driving [3] - 25:15,
25:20, 26:3
drug [6] - 7:10, 9:2,
16:8, 31:8, 36:24,
43:5
drugs [7] - 5:25, 13:8,
14:17, 16:11, 19:17,
21:12, 31:4
drum [3] - 4:14, 37:17,
40:16
due [2] - 27:6, 38:9
during [3] - 39:6,
39:17, 45:9

E

easier [1] - 8:8
easy [1] - 45:17
effectively [1] - 34:13
eight [1] - 5:24
either [1] - 30:20
elevated [1] - 41:20
employed [2] - 20:6,
40:25
employees [1] - 10:3
end [1] - 27:9
ends [1] - 18:8
enforcement [5] -
25:11, 37:24, 41:12,
41:21, 42:21
engaged [1] - 36:13
engaging [1] - 42:13
ensure [1] - 34:13

entered [1] - 3:9
entire [1] - 23:21
environment [1] -
26:18
essentially [5] - 14:15,
14:24, 17:20, 21:23,
31:20
establish [2] - 34:23,
34:25
estimate [1] - 13:17
evade [4] - 25:10,
38:10, 41:21, 42:20
evaluate [1] - 21:7
evidence [18] - 12:10,
14:5, 15:7, 15:16,
17:21, 17:22, 28:24,
30:7, 34:18, 34:24,
35:1, 35:8, 35:22,
36:3, 36:12, 40:8,
40:9, 45:10
evidenced [1] - 4:12
evident [1] - 8:4
exactly [1] - 15:5
examine [1] - 45:11
examining [1] - 35:12
excellent [1] - 22:20
exchanging [1] - 7:13
excuse [1] - 44:16
excused [1] - 45:23
executed [2] - 3:5,
36:18
expect [1] - 30:15
extent [1] - 23:11
extra [1] - 13:16
extraction [1] - 5:15
extremely [1] - 39:2
eyewitness [3] -
11:22, 11:25, 42:12

F

f)(1)(E) [1] - 34:4
facing [2] - 33:6, 39:1
fact [16] - 9:8, 13:7,
14:8, 15:10, 16:15,
17:12, 20:21, 24:1,
32:4, 35:16, 35:19,
40:25, 41:25, 42:21,
43:4, 45:2
factor [7] - 14:5,
17:24, 19:25, 23:7,
23:9, 37:13, 37:25
factors [12] - 14:6,
15:15, 15:23, 24:16,
29:13, 29:23, 35:5,
35:12, 35:16, 36:11,
41:7, 43:7
facts [3] - 13:6, 30:3,
30:15, 36:6, 39:7,
40:6, 41:4

factual [1] - 30:8
fair [1] - 15:9
family [1] - 23:22
far [5] - 8:19, 17:20,
18:19, 22:4, 39:20
Faruqui [2] - 44:12,
44:15
fashion [1] - 38:11
father [1] - 22:20,
22:23, 23:13
favor [1] - 25:10
federal [1] - 26:17
felon [1] - 7:20
felonies [1] - 15:19
felony [3] - 15:19,
15:20, 38:10
fentanyl [10] - 3:17,
3:20, 9:3, 27:1,
33:15, 36:14, 37:3,
37:9, 40:19, 40:20
few [1] - 23:2
field [3] - 3:16, 37:2
field-positive [1] -
37:2
field-tested [1] - 3:16
filed [5] - 4:17, 4:18,
12:22, 13:15, 15:3
finger [1] - 11:24
firearm [10] - 5:25,
6:1, 10:21, 10:23,
16:5, 22:22, 25:1,
27:1, 37:3, 38:17
firearms [13] - 3:10,
6:2, 6:5, 9:1, 9:6,
9:11, 11:1, 15:20,
16:8, 23:17, 25:13,
31:3, 37:12, 37:14,
37:20, 38:9, 41:8,
43:4
fired [8] - 9:25, 10:14,
10:16, 24:22, 25:1,
38:21, 41:13
first [4] - 8:5, 14:9,
16:7, 29:12
five [3] - 28:11, 33:1,
38:24
five-year [3] - 28:11,
33:1, 38:24
fled [1] - 10:4
flight [6] - 12:10, 15:8,
34:25, 36:4, 36:7,
36:8
flip [1] - 22:18
focus [2] - 16:3, 18:1
focused [1] - 14:8
focuses [1] - 16:1
follow [2] - 26:22,
33:25
following [1] - 34:1
forth [1] - 21:6

forward [3] - 24:3,
24:6, 32:16
four [7] - 4:10, 8:24,
9:14, 35:12, 36:11,
36:21, 40:17
fours [1] - 39:8
Fourth [3] - 28:25,
29:16, 29:19
frankly [1] - 42:22
full [3] - 20:6, 20:8,
31:9
full-time [3] - 20:6,
20:8, 31:9
future [4] - 14:2,
30:19, 30:23, 42:16

G

ghost [31] - 6:13, 6:15,
9:12, 10:8, 10:9,
25:5, 25:7, 25:9,
25:10, 25:13, 25:20,
28:20, 32:7, 37:21,
37:22, 38:2, 38:17,
39:16, 39:21, 39:22,
40:17, 41:17, 41:18,
41:22, 41:23, 41:25,
42:1, 42:19, 43:4
girlfriend [1] - 42:5
given [1] - 26:7
gonna [1] - 7:18
government [21] - 2:9,
5:6, 13:23, 14:4,
15:6, 16:1, 16:18,
17:25, 18:18, 20:7,
30:11, 34:3, 34:23,
34:25, 35:4, 35:14,
36:2, 37:20, 44:16,
45:10, 45:20
government's [6] -
24:20, 34:1, 34:20,
35:20, 35:25, 41:5
grams [2] - 7:5, 33:14
grant [2] - 41:4, 43:9
granting [3] - 34:1,
35:25, 36:9
green [3] - 5:22, 6:20,
10:23
grown [3] - 21:22,
21:25, 32:21
guilty [1] - 11:17
gun [26] - 6:6, 6:10,
6:13, 6:15, 6:17,
6:22, 7:14, 10:8,
10:9, 10:11, 11:8,
11:9, 11:11, 11:24,
25:20, 28:20, 37:6,
38:15, 38:18, 39:12,
39:16, 41:17, 41:22,
41:23, 42:22

**guns** [35] - 5:13, 6:17, 9:12, 9:18, 9:20, 10:13, 11:5, 14:17, 19:17, 21:12, 22:12, 25:5, 25:7, 25:9, 25:10, 25:13, 32:7, 37:21, 37:22, 37:23, 37:24, 38:2, 38:8, 39:13, 39:16, 39:21, 39:22, 40:17, 41:18, 41:25, 42:1, 42:19, 43:5
**gunshots** [1] - 41:15

**H**

**half** [2] - 8:9, 8:15
**handgun** [1] - 43:3
**hanging** [3] - 10:24, 11:8, 37:4
**Harden** [1] - 2:19
**head** [1] - 18:21
**hear** [2] - 30:20, 31:19
**heard** [4] - 2:25, 13:22, 13:24, 13:25
**hearing** [18] - 2:7, 2:21, 4:22, 14:25, 17:5, 19:8, 39:6, 43:6, 43:14, 43:18, 43:24, 44:15, 44:20, 45:6, 45:7, 45:9, 45:14
**hearings** [2] - 15:13, 34:22
**heavily** [1] - 15:14
**help** [1] - 24:15
**helps** [1] - 30:11
**high** [1] - 4:14
**highlight** [2] - 11:15, 12:11
**highlighted** [3] - 5:18, 12:6, 30:24
**highly** [1] - 36:24
**history** [11] - 12:4, 19:12, 19:13, 19:21, 19:22, 23:10, 26:12, 27:13, 27:15, 35:8, 40:22
**hold** [1] - 20:19
**holds** [1] - 9:19
**holes** [1] - 10:6
**home** [3] - 9:9, 9:19, 10:13, 21:11, 23:4, 32:20, 32:25, 42:23
**Honor** [65] - 2:3, 2:10, 2:13, 2:24, 2:25, 4:5, 5:2, 5:18, 6:11, 7:9, 8:20, 9:3, 9:7, 9:17, 11:3, 11:12, 11:14, 12:9, 12:18, 13:1,

13:4, 13:22, 14:3, 14:8, 14:21, 14:23, 15:9, 15:21, 16:1, 16:6, 16:12, 16:18, 17:11, 18:10, 19:10, 20:17, 20:20, 21:14, 22:4, 22:14, 22:17, 23:1, 23:5, 23:14, 23:19, 24:20, 25:22, 26:6, 26:24, 27:15, 27:21, 28:11, 29:9, 29:11, 30:4, 30:17, 32:8, 32:10, 32:18, 33:9, 43:11, 43:16, 44:18, 44:25, 45:21
**Honor's** [1] - 30:8
**hoping** [1] - 24:4
**hours** [2] - 4:22, 20:9
**house** [5] - 11:6, 20:10, 21:24, 22:13, 31:12
**household** [3] - 20:11, 31:6, 31:17

**I**

**idea** [2] - 21:22, 23:23
**identified** [1] - 10:3
**illustrate** [1] - 12:4
**illustrated** [1] - 32:1
**impact** [1] - 30:6
**important** [1] - 21:18
**impose** [2] - 31:21, 34:16
**inaudible** [1] - 44:9
**incident** [2] - 25:4, 25:18
**include** [1] - 36:21
**included** [1] - 37:15
**including** [7] - 35:6, 35:17, 39:15, 39:25, 41:6, 42:4, 42:24
**incoming** [3] - 5:21, 7:1, 7:7
**indicate** [1] - 16:9
**indicates** [2] - 20:1, 22:20
**indication** [4] - 20:3, 22:1, 26:11, 26:21
**indicative** [2] - 5:25, 36:24
**indictment** [1] - 33:7
**individual** [2] - 15:7, 34:5
**individually** [1] - 21:5
**information** [1] - 28:3
**inhabitants** [1] - 42:23
**inquiry** [1] - 17:23
**inside** [1] - 40:12
**instances** [1] - 26:13

**intact** [1] - 39:13
**intent** [1] - 14:17
**intentionally** [1] - 25:9
**interest** [1] - 45:3
**interim** [1] - 23:1
**intimidating** [1] - 42:12
**introduce** [1] - 2:8
**investigation** [1] - 38:20
**involved** [1] - 21:1
**involves** [1] - 38:24
**Iris** [1] - 2:11
**issue** [1] - 36:8
**issues** [6] - 15:17, 28:25, 29:1, 29:20, 39:24, 39:25
**items** [2] - 36:20, 40:13

**J**

**JACOB** [27] - 2:13, 5:2, 13:22, 14:21, 17:9, 17:11, 18:4, 18:10, 18:15, 18:23, 18:25, 19:3, 19:6, 21:14, 22:10, 22:14, 22:17, 24:19, 25:22, 26:5, 27:11, 29:9, 43:25, 44:8, 44:13, 44:25, 45:21
**Jacob** [10] - 2:14, 2:16, 13:21, 24:18, 27:18, 29:8, 43:23, 44:5, 44:24, 45:13
**January** [7] - 8:14, 10:16, 24:23, 25:4, 25:15, 38:21, 42:6
**Jaynice** [1] - 2:19
**Jevaughn** [25] - 3:1, 3:6, 3:20, 4:3, 5:10, 5:16, 5:20, 5:21, 6:18, 6:21, 6:24, 7:1, 7:2, 7:5, 7:8, 7:15, 7:20, 8:15, 11:21, 12:10, 12:15, 33:5, 37:8, 37:10, 38:7
**Jevaughn's** [1] - 8:18
**job** [3] - 20:7, 20:17, 31:7
**Johnson** [1] - 8:7
**join** [1] - 33:10
**joint** [4] - 5:22, 6:10, 22:11, 22:24
**Joint** [1] - 22:10
**joints** [1] - 6:19
**Joseph** [2] - 18:3, 19:23
**Judge** [11] - 14:14,

15:4, 15:9, 15:15, 17:16, 18:5, 18:17, 19:11, 19:14, 44:12, 44:15
**judge** [1] - 18:7
**judges** [1] - 45:9
**June** [1] - 42:4
**justice** [6] - 12:1, 27:23, 28:17, 42:7, 42:11, 45:3

**K**

**keeping** [1] - 10:12
**keeps** [2] - 10:12, 32:22
**kept** [1] - 10:23
**ketamine** [1] - 37:10
**kind** [1] - 45:5
**King** [1] - 41:13
**kitchen** [1] - 10:2
**knowledge** [1] - 5:11
**known** [1] - 22:2
**knows** [3] - 20:18, 22:2, 28:22

**L**

**laptop** [1] - 6:19
**large** [5] - 4:11, 10:8, 13:7, 36:21, 41:25
**large-capacity** [1] - 10:8
**laser** [2] - 6:19, 6:23
**last** [3] - 16:4, 18:16, 24:19
**law** [7] - 17:7, 25:10, 37:23, 38:10, 41:12, 41:21, 42:20
**lead** [5] - 10:15, 10:18, 24:21, 25:16, 38:20
**leading** [3] - 3:6, 36:16, 45:14
**least** [2] - 3:13, 5:11
**leaves** [1] - 9:19
**led** [3] - 25:19, 39:24, 41:4
**left** [1] - 5:19
**legally** [1] - 7:21
**less** [1] - 17:2
**letters** [1] - 22:19
**level** [2] - 14:25, 32:9
**license** [1] - 9:5
**life** [1] - 23:22
**lifestyle** [1] - 31:11
**light** [1] - 45:2
**likely** [3] - 10:14, 10:20, 20:19
**limit** [1] - 44:5
**link** [1] - 40:3

**literally** [1] - 4:22
**litigation** [1] - 15:11
**lives** [1] - 31:12
**living** [2] - 20:9, 32:19
**loaded** [9] - 3:13, 3:14, 10:24, 11:10, 11:11, 22:12, 37:3, 37:6, 42:22
**located** [3] - 3:15, 11:9, 37:6
**location** [1] - 9:24
**long-term** [1] - 41:18
**longstanding** [1] - 12:6
**look** [7] - 13:5, 17:14, 19:1, 27:9, 30:23, 33:22, 39:6
**looking** [1] - 7:19
**looks** [1] - 24:22
**lose** [1] - 26:19
**low** [3] - 8:23, 41:1
**lower** [1] - 14:25
**Luther** [1] - 41:13

**M**

**ma'am** [3] - 24:13, 24:17, 45:18
**magazine** [2] - 37:17, 40:16
**magazines** [1] - 4:14
**Magistrate** [1] - 2:4
**magistrate** [5] - 14:16, 14:25, 15:1, 43:12, 45:9
**man** [2] - 21:23, 32:21
**man's** [1] - 21:25
**mandatory** [9] - 28:8, 28:9, 28:11, 33:1, 33:6, 33:12, 33:14, 38:25, 39:2
**manufactured** [1] - 37:22
**March** [5] - 3:5, 5:17, 8:2, 31:16, 42:2
**Maria** [1] - 2:13
**Mark** [57] - 2:5, 2:14, 2:17, 3:1, 3:3, 3:6, 3:8, 3:10, 3:20, 3:22, 4:3, 5:10, 5:11, 6:9, 6:12, 6:14, 6:18, 6:21, 6:22, 6:25, 7:1, 7:20, 7:21, 9:5, 9:18, 10:5, 11:21, 11:24, 12:10, 12:13, 12:15, 16:2, 21:4, 22:7, 22:25, 25:2, 25:8, 27:16, 27:22, 33:5, 34:24, 35:1, 36:13, 36:19, 37:8, 37:10,

38:6, 38:7, 38:14,
40:23, 41:9, 41:11,
41:16, 42:13, 43:1,
45:5
**Mark's** [26] - 3:1, 3:23,
4:10, 5:16, 5:19,
8:23, 10:22, 11:2,
14:1, 15:24, 19:19,
19:22, 37:12, 37:18,
38:2, 39:13, 39:17,
39:18, 40:13, 40:21,
41:14, 42:3, 42:5,
42:15, 42:17, 42:20
**marked** [1] - 37:23
**marking** [3] - 3:18,
3:19, 4:7
**markings** [6] - 4:1,
4:2, 9:14, 9:15, 37:7,
41:15
**Martin** [1] - 41:13
**matter** [1] - 2:7
**McCranie** [48] - 2:10,
2:11, 2:22, 2:24, 4:5,
4:9, 5:1, 5:3, 5:6,
5:9, 6:3, 7:25, 8:2,
9:7, 9:13, 9:17, 11:3,
11:11, 11:14, 13:1,
13:4, 13:13, 27:20,
27:21, 28:2, 28:10,
28:14, 29:10, 29:24,
30:4, 30:17, 30:22,
31:20, 32:1, 32:4,
32:8, 32:10, 32:12,
32:18, 33:3, 33:9,
33:13, 43:16, 43:20,
44:16, 44:18, 44:22,
45:20
**mean** [11] - 14:4,
16:15, 19:4, 19:16,
20:21, 21:22, 22:1,
25:3, 25:5, 30:1,
31:23
**means** [1] - 5:20
**meant** [2] - 25:10,
28:5
**meet** [1] - 41:1
**Mehta** [1] - 19:14
**Mehta's** [1] - 18:17
**memo** [3] - 4:13, 4:21,
10:21
**memorandum** [1] -
22:7
**mention** [3] - 4:21,
12:13, 27:12
**mentioned** [4] - 9:21,
32:23, 43:6, 43:22
**mere** [1] - 43:3
**Meriweather** [2] -
18:5, 19:11
**message** [4] - 5:21,

7:1, 7:7, 8:14
**messages** [12] - 4:20,
5:10, 5:14, 8:2, 8:20,
8:24, 12:12, 25:8,
38:3, 38:5, 38:6,
38:13
**met** [6] - 15:6, 15:12,
35:4, 35:14, 35:21,
36:2
**might** [7] - 11:17,
12:10, 12:14, 29:19,
29:20, 33:6, 42:24
**mingled** [1] - 22:22
**minimum** [7] - 28:8,
28:11, 33:2, 33:12,
33:14, 38:25, 39:2
**minimums** [2] - 28:9,
33:6
**minor** [1] - 42:24
**mitigate** [2] - 31:22,
42:18
**mitigated** [2] - 35:2,
35:18
**mom's** [1] - 20:15
**moment** [1] - 6:11
**money** [5] - 6:19, 7:13,
13:14, 13:18, 31:8
**months** [2] - 12:2,
27:23
**moreover** [1] - 39:22
**morning** [1] - 9:23
**mortgage** [1] - 20:14
**Moss** [5] - 14:14, 15:4,
15:9, 15:15, 17:16
**most** [3] - 9:3, 13:16,
19:25
**mostly** [2] - 11:5,
39:11
**mother** [9] - 12:19,
20:11, 21:25, 22:25,
23:2, 23:16, 31:6,
31:13, 32:19
**mother's** [1] - 20:10
**motion** [7] - 11:25,
12:23, 15:3, 34:1,
36:9, 41:5, 43:9
**motivating** [2] - 23:7,
23:9
**moves** [2] - 6:8, 34:3
**moving** [3] - 6:24,
24:3, 24:6
**MPD** [2] - 9:8, 9:22
**MS** [70] - 2:10, 2:13,
2:24, 4:5, 4:9, 5:1,
5:2, 5:3, 5:6, 5:9,
6:3, 7:25, 8:2, 9:7,
9:13, 9:17, 11:3,
11:11, 11:14, 13:1,
13:4, 13:13, 13:22,
14:21, 17:9, 17:11,

18:4, 18:10, 18:15,
18:23, 18:25, 19:3,
19:6, 21:14, 22:10,
22:14, 22:17, 24:19,
25:22, 26:5, 27:11,
27:21, 28:2, 28:10,
28:14, 29:9, 29:10,
29:24, 30:4, 30:17,
30:22, 32:1, 32:4,
32:8, 32:10, 32:12,
32:18, 33:3, 33:9,
33:13, 43:16, 43:20,
43:25, 44:8, 44:13,
44:18, 44:22, 44:25,
45:20, 45:21
**multiple** [6] - 4:14,
21:1, 25:5, 39:13,
43:16
**Munchel** [3] - 21:8,
30:20, 35:3
**must** [5] - 22:21,
24:10, 34:23, 34:25,
35:5

## N

**name** [1] - 40:13
**narcotic** [1] - 36:15
**narcotics** [11] - 4:13,
5:12, 8:12, 8:13,
8:22, 31:2, 31:12,
36:13, 36:22, 36:24,
40:19
**nature** [4] - 35:6, 35:9,
36:11, 42:14
**nearly** [1] - 37:16
**necessarily** [1] - 15:14
**Need** [1] - 7:16
**need** [3] - 31:19, 38:15
**never** [5] - 16:22, 20:2,
26:16, 31:21
**next** [8] - 3:15, 37:3,
38:15, 43:10, 43:15,
44:3, 44:7, 45:6
**NIBIN** [3] - 10:15,
10:18, 24:21, 25:16,
38:19
**no-papered** [4] - 9:10,
16:16, 17:1, 29:5
**none** [2] - 32:23,
32:24
**nonviolent** [2] - 28:16,
28:20
**noon** [1] - 5:7
**normal** [4] - 44:1
**notable** [1] - 16:5
**note** [19] - 16:12,
17:13, 18:7, 19:10,
19:15, 21:2, 22:6,
24:19, 24:21, 27:12,

37:1, 37:11, 38:5,
38:12, 38:24, 40:22,
42:6, 42:10
**nothing** [3] - 16:9,
27:14, 31:13
**notwithstanding** [1] -
31:23
**November** [2] - 6:4,
6:24
**Number** [1] - 2:4
**number** [14] - 5:19,
18:9, 19:4, 21:11,
25:12, 27:6, 27:8,
37:19, 37:23, 38:12,
38:13, 39:12, 41:25,
42:19
**numbers** [2] - 3:13,
40:17
**nurse** [1] - 21:17

## O

**objection** [2] - 44:25,
45:3
**obstruction** [5] - 12:1,
27:23, 28:17, 42:7,
42:11
**obviously** [3] - 4:6,
10:19, 21:22
**occupant** [1] - 40:15
**October** [9] - 6:12,
7:12, 7:25, 9:9, 9:21,
38:13, 41:11, 41:24
**offense** [2] - 35:7,
36:12
**offenses** [1] - 39:3
**offer** [1] - 34:17
**office** [2] - 29:1, 29:12
**officer** [2] - 4:2, 37:9
**OFFICER** [1] - 2:18
**old** [3] - 16:3, 21:23
**older** [1] - 15:24
**once** [2] - 13:17, 34:16
**one** [30] - 3:13, 3:14,
4:15, 6:20, 9:3, 10:2,
10:9, 10:17, 11:4,
11:12, 12:8, 14:5,
15:19, 16:3, 16:4,
17:24, 22:25, 25:20,
25:22, 28:3, 29:4,
30:20, 36:15, 39:12,
39:16, 41:6, 43:3,
45:8
**ongoing** [2] - 31:2,
32:5
**opening** [1] - 30:21
**operates** [1] - 34:16
**operating** [1] - 19:17
**operation** [1] - 16:9
**opinion** [3] - 15:4,

17:19, 18:1
**opposed** [1] - 30:11
**order** [7] - 2:2, 14:15,
14:16, 15:3, 18:12,
18:13, 33:25
**orders** [1] - 26:22
**orient** [1] - 5:17
**otherwise** [1] - 34:14
**outer** [1] - 44:5
**outlined** [1] - 35:5
**overcome** [1] - 35:20
**overdose** [1] - 36:16
**own** [1] - 21:8
**owned** [1] - 40:3
**ownership** [2] - 3:24,
40:10

## P

**p.m** [5] - 2:2, 33:19,
33:20, 44:11, 45:24
**packaging** [2] - 36:22,
40:18
**paper** [2] - 28:22,
28:23
**papered** [6] - 9:10,
16:16, 17:1, 29:5,
29:15
**papers** [1] - 2:21
**paraphernalia** [1] -
13:9
**part** [1] - 32:12
**participation** [1] -
41:19
**particular** [3] - 28:24,
29:2, 41:7
**particularly** [2] -
36:14, 42:19
**parties** [1] - 2:7
**party** [5] - 21:10,
23:24, 25:25, 32:20,
40:3
**past** [6] - 23:2, 26:24,
30:23, 32:2, 32:12,
32:15
**pat** [2] - 10:8, 41:16
**patience** [1] - 33:22
**payments** [1] - 20:14
**PCP** [1] - 14:18
**pending** [3] - 12:18,
12:20, 34:6
**people** [3] - 21:1,
23:8, 29:15
**percent** [1] - 22:12
**perfect** [2] - 23:23,
43:7
**perhaps** [2] - 8:4, 8:21
**period** [1] - 42:10
**permit** [1] - 20:12
**person** [13] - 6:13,

17:22, 21:8, 25:14, 26:14, 28:19, 29:5, 34:8, 34:9, 35:8, 35:9, 35:10, 39:17
**person's** [2] - 29:17, 35:11
**persuasive** [1] - 12:9, 40:6
**phone** [2] - 5:16, 5:19
**picture** [1] - 4:12
**pistol** [1] - 28:19
**pistols** [4] - 9:14, 10:12, 11:7, 37:15
**pizza** [1] - 10:2
**place** [5] - 20:15, 26:8, 26:14, 27:4, 42:6
**placed** [2] - 20:5, 21:11
**plausible** [1] - 40:2
**plead** [1] - 11:16
**point** [6] - 14:4, 14:6, 27:6, 29:21, 31:23, 38:13
**police** [7] - 3:6, 3:9, 9:24, 10:5, 10:16, 16:10, 41:14
**portions** [1] - 37:1
**pose** [2] - 29:5, 41:18
**posed** [3] - 35:11, 42:15, 42:16
**poses** [7] - 31:24, 34:24, 35:1, 35:22, 36:3, 36:7, 43:6
**position** [2] - 20:19, 44:17
**positive** [5] - 3:16, 37:2, 40:19, 40:20
**possessed** [2] - 25:10, 41:25
**possesses** [1] - 9:18
**possessing** [1] - 38:9
**possession** [22] - 4:4, 22:22, 25:2, 25:5, 25:9, 25:14, 25:21, 27:2, 31:3, 32:6, 36:20, 38:2, 39:10, 39:12, 39:18, 40:1, 41:8, 41:9, 41:16, 41:23, 42:1, 43:3
**possibly** [1] - 12:7
**potential** [3] - 33:7, 33:11, 41:24
**potentially** [2] - 33:9, 33:13
**powder** [3] - 3:16, 8:7
**powdered** [1] - 37:2
**preliminary** [8] - 4:20, 4:24, 5:15, 43:18, 44:15, 44:19, 45:7, 45:9

**prepare** [1] - 44:6
**preponderance** [2] - 34:23, 36:2
**presence** [3] - 4:10, 24:14, 45:18
**present** [4] - 2:6, 2:14, 39:19, 40:5
**presume** [1] - 30:2
**presumption** [12] - 14:18, 34:5, 34:11, 34:16, 34:18, 34:19, 35:13, 35:15, 35:19, 36:10, 41:3
**pretrial** [2] - 12:23, 36:1
**Pretrial** [1] - 2:19
**pretty** [2] - 14:17, 17:19
**price** [1] - 7:6
**pricing** [1] - 7:11
**private** [1] - 32:22
**privately** [1] - 37:22
**PROBATION/ PRETRIAL** [1] - 2:18
**problem** [2] - 26:4, 32:7
**proceedings** [1] - 14:2
**PROCEEDINGS** [1] - 2:1
**products** [1] - 8:13
**proffer** [2] - 16:7, 21:21
**proffered** [1] - 13:23
**proffering** [1] - 15:13
**prohibited** [1] - 38:9
**propose** [3] - 23:16, 25:23, 43:17
**proposed** [1] - 26:7
**proposing** [1] - 26:22
**prosecutor** [1] - 16:23
**protect** [2] - 31:4, 34:15
**protective** [1] - 41:16
**prove** [2] - 17:25, 34:20
**provide** [1] - 44:22
**provided** [1] - 9:22
**PSR** [1] - 11:19
**Public** [1] - 20:7
**public** [3] - 9:24, 10:13, 28:19
**published** [1] - 15:4
**purchase** [5] - 5:13, 6:5, 6:17, 6:22, 7:21
**purchasing** [2] - 7:22, 8:12
**pursuant** [1] - 11:18
**put** [2] - 8:9, 45:10

**Q**

**quality** [1] - 8:13
**quantities** [3] - 4:11, 4:12, 36:22
**quantity** [2] - 8:22, 13:8
**questions** [3] - 12:18, 12:20, 45:13
**quick** [1] - 3:2
**quickly** [1] - 29:24

**R**

**rail** [3] - 10:25, 11:9, 37:5
**raw** [1] - 5:23
**read** [4] - 13:13, 18:13, 30:13, 38:3
**reading** [2] - 17:15, 30:12
**really** [3] - 23:20, 24:1, 26:2
**reason** [3] - 13:13, 21:25, 40:25
**reasonably** [2] - 26:8, 34:7
**reasoning** [1] - 15:5
**reasons** [2] - 28:23, 34:2
**rebut** [1] - 41:2
**rebuttal** [3] - 34:11, 35:13, 41:3
**rebutted** [1] - 35:15
**received** [4] - 5:7, 11:17, 12:2, 12:12
**recent** [3] - 25:4, 25:17, 41:7
**recess** [3] - 33:17, 33:19, 33:20
**record** [4] - 2:8, 16:13, 26:21, 42:6
**records** [2] - 11:16, 12:1
**recovered** [11] - 3:10, 6:13, 10:8, 10:17, 10:22, 13:10, 37:3, 37:17, 38:18, 40:11, 40:21
**red** [2] - 5:18, 6:20
**reference** [1] - 14:24
**referenced** [1] - 15:15
**referring** [2] - 26:6, 41:10
**reflect** [2] - 32:9, 41:19
**reflecting** [1] - 43:7
**reflects** [2] - 42:20, 42:23
**Reform** [2] - 34:4,

35:6
**regardless** [1] - 34:19
**registered** [1] - 21:17
**regular** [2] - 5:23, 42:24
**related** [1] - 19:2
**release** [13] - 12:23, 21:5, 23:8, 24:3, 26:15, 27:2, 31:22, 31:24, 35:3, 35:11, 39:24, 42:15, 42:17
**released** [7] - 13:3, 14:14, 18:6, 31:5, 31:14, 34:5
**releases** [1] - 23:15
**relies** [1] - 20:13
**rely** [2] - 13:6, 23:8
**relying** [2] - 30:2, 30:16
**remember** [3] - 18:20, 18:22, 18:24
**renting** [1] - 21:24
**repeated** [1] - 26:12
**report** [6] - 5:15, 9:22, 9:24, 10:15, 16:10, 41:12
**reported** [1] - 42:5
**request** [1] - 36:1
**required** [4] - 30:20, 34:8, 41:2, 45:10
**requirement** [1] - 41:1
**requires** [1] - 21:8
**residence** [9] - 3:23, 8:23, 9:19, 10:22, 22:5, 23:20, 24:1, 24:2, 25:13
**resides** [3] - 3:3, 3:8, 31:6
**resolution** [1] - 44:23
**respect** [3] - 21:9, 36:8, 40:8
**respond** [1] - 24:20
**responded** [3] - 9:24, 10:17, 41:12
**response** [4] - 8:18, 9:25, 12:25, 31:10
**responsibilities** [1] - 22:23
**responsible** [1] - 23:12
**resulted** [1] - 27:2
**return** [1] - 32:25
**review** [1] - 5:14
**reviewed** [2] - 2:21, 39:6
**reviewing** [1] - 24:22
**revoke** [1] - 15:3
**revoking** [1] - 14:15
**rifle's** [1] - 40:16
**rifles** [4] - 3:11, 9:15,

37:16, 39:19
**Ring** [1] - 32:22
**risk** [6] - 12:10, 15:8, 34:24, 36:3, 36:7, 36:8
**roadmap** [1] - 45:5
**room** [3] - 21:24, 23:17, 40:12
**round** [3] - 3:13, 3:14, 10:9
**rounds** [3] - 4:15, 37:17, 40:17
**ruling** [1] - 33:24

**S**

**safe** [4] - 7:14, 11:2, 11:4, 40:11
**safety** [4] - 13:25, 34:8, 34:15, 34:21
**sale** [1] - 8:12
**scales** [4] - 4:10, 8:25, 36:21, 40:18
**scanned** [1] - 29:24
**scattered** [1] - 11:6
**scene** [1] - 13:14
**school** [1] - 23:3
**search** [3] - 3:4, 21:25, 36:18
**searches** [1] - 23:17
**secure** [1] - 38:8
**see** [3] - 5:16, 28:4, 36:5
**seeking** [1] - 16:25
**sell** [1] - 37:8
**selling** [1] - 36:13
**sentence** [2] - 11:17, 39:2
**sentenced** [1] - 28:5
**separates** [2] - 15:23
**serial** [4] - 3:12, 37:23, 39:12, 40:17
**serious** [6] - 26:25, 34:24, 36:3, 36:4, 36:7, 39:3
**seriousness** [2] - 35:10, 42:14
**Services** [1] - 2:19
**set** [11] - 2:7, 2:20, 21:5, 25:3, 27:25, 28:6, 39:3, 42:9, 43:13, 44:11, 44:14
**seven** [6] - 3:10, 3:12, 9:11, 32:6, 37:15, 37:21
**several** [2] - 11:4, 29:13
**shared** [1] - 4:23
**sheer** [1] - 42:19
**shooting** [1] - 25:18

**shortly** [1] - 5:7
**shot** [1] - 24:22
**shots** [4] - 9:25, 10:16, 38:21, 41:13
**ShotSpotter** [2] - 10:1, 38:22
**shoulder** [2] - 10:24, 37:4
**show** [11] - 5:10, 6:11, 6:17, 7:14, 10:21, 11:16, 12:1, 15:6, 16:4, 36:2, 38:15
**showed** [1] - 11:19
**showing** [2] - 35:21, 41:2
**shown** [2] - 35:17, 38:6
**shows** [2] - 6:6, 10:18
**showup** [1] - 11:23
**side** [1] - 22:18
**sight** [1] - 38:18
**significant** [12] - 17:15, 19:20, 19:25, 21:11, 37:12, 37:13, 37:19, 37:25, 39:23, 39:25, 42:16
**similar** [4] - 10:21, 14:17, 26:25, 39:5
**simply** [1] - 17:16
**situation** [1] - 23:25
**six** [5] - 3:5, 3:12, 9:13, 32:6, 37:21
**snow** [3] - 8:6, 8:16, 8:17
**sold** [5] - 3:20, 4:2, 7:10, 9:4, 37:9
**someone** [1] - 18:6
**son** [4] - 22:8, 22:11, 23:3, 42:24
**sorry** [5] - 6:25, 9:9, 18:20, 18:23, 43:21
**sort** [3] - 8:3, 13:16, 23:23
**sought** [1] - 38:4
**Southeast** [2] - 3:3, 38:22
**spade** [2] - 3:19, 4:6
**spades** [1] - 37:7
**speaking** [1] - 19:20
**speaks** [2] - 14:11, 16:16
**specific** [1] - 7:19
**specifically** [2] - 5:12, 10:23
**Speedy** [1] - 44:17
**speedy** [1] - 45:4
**stark** [1] - 16:24
**starting** [2] - 2:8, 6:7
**statement** [1] - 17:19
**States** [7] - 2:4, 2:11,

14:10, 15:18, 17:12, 18:3, 27:11
**status** [2] - 43:13, 43:14
**statutory** [1] - 34:18
**step** [1] - 10:7
**stepfather** [1] - 23:2
**stepped** [1] - 10:7
**still** [8] - 26:15, 27:2, 31:9, 31:12, 31:24, 39:12, 43:12, 43:17
**stopped** [1] - 10:5
**stops** [1] - 17:23
**stored** [1] - 37:4
**storm** [1] - 43:7
**story** [1] - 22:3
**straight** [1] - 21:17
**streets** [1] - 7:10
**strict** [2] - 26:7, 26:23
**strictest** [1] - 26:18
**string** [2] - 7:24, 17:16
**strong** [3] - 14:5, 17:19, 40:9
**style** [5] - 3:11, 37:16, 39:19, 40:16, 43:3
**subject** [4] - 10:19, 20:2, 26:17, 28:4
**substance** [2] - 37:2, 40:20
**substantial** [1] - 36:12
**suggest** [2] - 8:20, 28:18
**suggests** [2] - 31:9, 32:15
**summary** [1] - 33:24
**Superior** [1] - 9:10
**superseding** [1] - 33:7
**supervised** [1] - 26:15
**Supp** [1] - 14:21
**support** [2] - 22:19, 36:5, 45:11
**suppose** [1] - 19:5
**suppressed** [1] - 29:20
**suppression** [4] - 15:11, 15:17, 30:5, 39:23
**suspicious** [1] - 32:24

**T**

**talks** [1] - 8:6
**Taylor** [13] - 14:10, 15:18, 17:12, 17:15, 27:11, 29:23, 29:24, 30:10, 39:21, 39:23, 39:25, 40:4, 40:6
**ten** [1] - 33:14
**ten-year** [1] - 33:14
**term** [1] - 41:18

**terms** [1] - 32:14
**tested** [6] - 3:16, 10:18, 37:2, 40:19, 40:20
**testifies** [1] - 21:21
**testify** [3] - 12:19, 20:12, 21:19
**testimony** [2] - 24:9, 24:13
**text** [4] - 7:24, 8:24, 38:6, 38:14
**texting** [1] - 5:20
**thankful** [1] - 27:16
**THE** [68] - 2:12, 2:16, 2:20, 3:25, 4:8, 4:25, 5:4, 5:8, 6:1, 7:23, 8:1, 9:5, 9:11, 9:16, 11:1, 11:8, 11:13, 12:22, 13:2, 13:12, 13:20, 14:19, 17:3, 17:10, 18:2, 18:5, 18:12, 18:22, 18:24, 19:1, 19:4, 21:7, 22:6, 22:11, 22:15, 24:7, 25:3, 26:3, 27:5, 27:18, 27:25, 28:8, 28:13, 29:3, 29:22, 30:1, 30:9, 30:18, 31:18, 32:3, 32:6, 32:9, 32:11, 32:17, 33:1, 33:4, 33:11, 33:16, 33:21, 43:13, 43:19, 43:21, 44:2, 44:14, 44:21, 44:24, 45:2, 45:22
**theory** [2] - 33:10, 33:12
**they've** [1] - 17:1
**third** [6] - 21:10, 23:24, 25:25, 32:19, 32:20, 40:3
**third-party** [5] - 21:10, 23:24, 25:25, 32:20, 40:3
**Thomas** [10] - 18:3, 19:16, 27:5, 27:10, 27:12, 28:15, 39:5, 39:9, 39:20, 40:6
**Thomas's** [2] - 19:12, 19:23
**thousand** [1] - 37:16
**three** [2] - 3:10, 9:15
**throughout** [1] - 11:6
**tied** [1] - 24:1
**Tim** [1] - 2:11
**today** [7] - 4:22, 9:4, 16:7, 24:8, 31:14, 37:14, 43:7
**today's** [1] - 44:19
**together** [3] - 8:21,

9:2, 12:5
**toll** [2] - 44:19, 45:4
**tomorrow** [1] - 7:15
**took** [1] - 41:10
**top** [3] - 6:8, 7:7, 18:21
**trace** [1] - 37:24
**tracing** [2] - 41:21, 42:21
**track** [1] - 37:24
**tracked** [1] - 41:14
**trafficking** [4] - 5:11, 16:9, 36:25, 43:5
**trial** [2] - 34:6, 45:4
**Trial** [1] - 44:17
**triggered** [1] - 34:16
**Trinidad** [4] - 12:11, 12:13, 12:14, 12:16
**troubling** [2] - 22:15, 25:6
**true** [1] - 31:18
**tucked** [1] - 10:9
**turned** [1] - 18:8
**two** [13] - 6:19, 8:21, 9:1, 9:15, 10:16, 11:21, 11:23, 12:4, 15:19, 16:6, 24:24, 33:10, 38:21
**type** [3] - 7:10, 10:11, 43:3
**types** [1] - 8:12

**U**

**U.S.C** [3] - 34:3, 34:10, 34:12
**UC** [1] - 4:3
**ultimate** [2] - 34:20, 35:21
**ultimately** [2] - 39:24, 41:4
**unattainable** [1] - 23:24
**uncharged** [1] - 17:6
**under** [12] - 18:6, 27:25, 28:5, 31:17, 33:10, 33:12, 34:3, 34:4, 34:11, 42:9, 44:17, 45:4
**undercover** [2] - 4:2, 37:8
**undercovers** [1] - 3:21
**United** [7] - 2:4, 2:11, 14:10, 15:18, 17:12, 18:3, 27:11
**unlawful** [1] - 38:20
**unless** [1] - 34:6
**unlocked** [1] - 40:11
**unusual** [1] - 20:22
**up** [12] - 7:7, 7:16, 8:9,

11:19, 14:9, 19:1, 27:9, 33:25, 39:1, 39:6, 45:10, 45:14

**V**

**variety** [3] - 28:22, 28:23, 29:13
**vehicle** [2] - 10:3, 10:4
**vehicles** [1] - 11:22
**verify** [1] - 28:2
**versus** [3] - 2:5, 8:7, 11:2
**viable** [1] - 32:20
**violent** [2] - 27:14
**virtue** [1] - 35:16
**visiting** [1] - 42:24
**volume** [1] - 43:3
**volumes** [1] - 16:16
**voluntarily** [1] - 18:18

**W**

**waistband** [1] - 10:10
**waiting** [1] - 27:8
**wallet** [1] - 40:12
**warrant** [2] - 3:4, 36:18
**warranted** [1] - 36:6
**Washington** [1] - 38:23
**weapons** [2] - 7:21, 13:7
**weed** [1] - 8:6
**week** [5] - 19:9, 22:25, 23:4, 44:7
**weigh** [1] - 29:21
**weighs** [1] - 15:14
**weight** [7] - 15:16, 17:20, 28:24, 30:7, 35:7, 40:8, 40:9
**whereas** [1] - 19:18
**white** [4] - 3:15, 8:7, 10:25, 37:2
**white-powdered** [1] - 37:2
**whole** [1] - 16:7
**willing** [2] - 38:7, 38:10
**willingness** [2] - 41:20, 42:20
**windshield** [2] - 10:6, 41:15
**wish** [1] - 2:22
**witnessed** [2] - 11:22, 42:12
**wondering** [1] - 30:9
**word** [2] - 8:17, 10:20
**words** [2] - 5:24, 8:4
**works** [2] - 22:24,

44:13
**Works** [1] - 20:7
**written** [1] - 33:25

## X

**Xulam** [1] - 35:3

## Y

**year** [11] - 12:8, 16:4, 16:20, 17:2, 18:22, 18:24, 20:17, 28:11, 33:1, 33:14, 38:24
**years** [5] - 16:2, 16:3, 21:23, 24:24, 39:1
**yourselves** [1] - 2:8
**Youth** [2] - 28:1, 42:9
**YRA** [3] - 11:18, 28:4, 28:5

## Z

**Zip** [2] - 37:7, 40:18
**Zips** [11] - 3:15, 3:18, 3:25, 4:1, 4:3, 4:13, 8:25, 10:25, 11:9, 36:22, 37:6